## Antonelli *v.* Tumolo, Appellant.

Argued April 24, 1957. Before JONES, C.J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*John J. McDevitt, 3rd,* with him *Peter P. Liebert, 3rd,* for defendant, Tumolo.

*I. R. Kremer,* with him *Max E. Cohen* and *Henry Temin,* for defendant, Archangelo.

*George T. Guarnieri,* for plaintiff, Jenkins.

OPINION BY MR. JUSTICE CHIDSEY, May 27, 1957:

These appeals arise from the refusal of the court below to disturb the verdicts of the jury in trespass actions consolidated for trial. Ralph A. Antonelli was a passenger in a car driven by Anthony Archangelo, and William J. Jenkins was a passenger in an automobile driven by George Tumolo at a time when the two vehicles collided. Antonelli brought an action against Tumolo in which Archangelo was brought in as additional defendant. Jenkins brought an action against Archangelo in which Tumolo was brought in as additional defendant. There was a third suit brought by

Archangelo against Tumolo in which Tumolo filed a counterclaim for damages from Archangelo. The jury returned a verdict in favor of the passenger Antonelli against both drivers in the amount of $2,500 and a verdict in favor of the passenger Jenkins against both drivers in the amount of $22,500. In the suit between the drivers the verdict was: "We find contributory negligence on the part of both parties.". All post-trial motions for judgment n.o.v. and for a new trial were denied by the court below. No appeal to this Court was taken in the suit between the drivers. The appeals before us are by both defendants from the judgments entered against them in the respective actions brought by Antonelli and Jenkins. Neither appellant contends that he was entitled to judgment n.o.v., and the appeals relate solely to the grant of a new trial.

Both defendants urge that the verdict in favor of the passenger Jenkins in the amount of $22,500 was excessive. In addition, it is contended on behalf of the defendants Archangelo [1] that a new trial *as to him* should be granted in both cases since the verdicts of negligence against both drivers are inconsistent, and that the weight of the evidence required a finding that Tumolo alone and not Archangelo was negligent. Tumolo of course resists this contention, and urges that if a new trial is granted it should be as to both defendants and not as to Archangelo alone.[2]

---

[1] Archangelo died subsequent to trial, and his administratrix, Helen Archangelo, is prosecuting this appeal in his stead.

[2] Although Tumolo contends that Archangelo was solely responsible for the collision, it is admitted in his brief that there were sufficient "probative facts to hold" both Archangelo and himself negligent, and that there is "no reason to reverse the verdicts and judgments because of the *liability* evidence". His concern on appeal is the excessiveness of the verdict in Jenkin's favor, and that he be included as a party defendant in a new trial if a new trial is granted. (Emphasis supplied).

The accident occurred on 49th Street in Philadelphia, a two-way street running generally north and south, upon which two sets of trolley car tracks were situated. The street is 38 feet wide, and, after subtracting the space taken by the automobiles which were parked on both sides of the street, it appears that there remained sufficient roadway for motor vehicles going in opposite directions to safely pass one another.

The testimony for Archangelo is to the effect that he was traveling south on 49th Street, straddling the west rail of the southbound trolley track, and following three cars which were preceding him; that he saw the Tumolo automobile about 50 to 75 feet away traveling north on his proper side of the medial line; and that suddenly, before Archangelo could do anything about it, the Tumolo automobile turned left across the medial or center line and struck his left front fender. The testimony on behalf of Tumolo had him traveling north on 49th Street straddling the east rail of the northbound trolley track; he saw two or three cars proceeding south on their side of the street; and when the Archangelo car, the last of the southbound cars, was about ten feet away from him, Archangelo seemed to cut out as if to see if he could pass the car in front of him, thus crossing the center line into Tumolo's lane and striking the latter's left front fender. The testimony of the investigating officers was to the effect that they could discern no fresh skid tracks but that the Tumolo car came to rest facing north with its left front fender about four feet over the center line. The Archangelo car came to rest about two feet north and away from the Tumolo car, facing southeast (toward the Tumolo car's lane), its right rear having come into contact with an automobile parked by the curb on the west (southbound) side of the street, and its left front about four feet from the center line in the southbound (Archangelo's) lane.

72

Archangelo argues that neither version of the accident places *both* drivers over the center line, that the jury had to believe one or the other caused the accident by crossing the center line, and that the position of the automobiles after the accident requires the belief that the Tumolo automobile was the one that invaded the Archangelo lane.

As to the positions of the automobiles after the accident, there is no clear indication of where the vehicles were when the collision actually took place. There were no skid marks. There was debris and dirt scattered throughout the area. The fact that both vehicles came to rest about four feet in the southbound lane is not necessarily indicative of where they collided. There was a considerable impact. Both automobiles were largely destroyed (the agreed damage to one was $1,200 and to the other $1,193). It is quite clear that they could easily have moved at least four feet or several times that distance before coming to a stop. From the testimony it would appear that the Archangelo vehicle, which was facing southeast at the time it came to rest, had traveled backward some distance, coming into contact with a parked car, and moved slightly forward again. We cannot say that the position of the cars after the accident required a finding that the point of contact was in the southbound lane. As stated in *Streilein et al. v. Vogel et al.,* 363 Pa. 379, 69 A. 2d 97, page 384: ". . . It is a matter of common knowledge that vehicles in motion, and especially ones under mechanical power, when suddenly and unexpectedly diverted from their course by a conflicting force, assume strange and ofttimes freakish positions. . .".

The jury did not have to believe in its entirety only one version of the accident. It cannot be said that if a jury accept part of a version of an accident it must accept all of what the witnesses have said. Archangelo says that he did not cross the center line, and that Tu-

molo did. Tumolo says that he did not cross the center line but that Archangelo did. Both insist that they were unable to avoid the accident. It is perfectly reasonable for the jury to believe so much of the testimony offered by a litigant as pertains to what the opposing party did, and disbelieve that part of the testimony as tends to absolve the litigant of liability. It is for the jury to reconcile such conflicting statements and say which shall prevail: *Adams v. Gardiner*, 306 Pa. 576, 585, 160 A. 589; *Cardone v. Sheldon Hotel Corporation*, 160 Pa. Superior Ct. 193, 195, 50 A. 2d 700; *Cericola et al. v. Redmon*, 182 Pa. Superior Ct. 19, 22, 124 A. 2d 417. Here the jury apparently believed that in fact *both* parties had crossed the center line, or that one party had crossed it and that the other party, having the opportunity, did not avoid the collision. As said in *Lavender, Administrator v. Kurn et al., Trustees, et al.*, 327 U. S. 645, 653, 90 L. Ed. 916, 923: "It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. . .". Despite the able argument of counsel, the record discloses that verdicts against both drivers were not inconsistent, but supported by facts and inferences properly drawn from the evidence.

It may be noted, parenthetically, that Archangelo himself is rather inconsistent in that while he urges that the accident was entirely the fault of Tumolo, he has not appealed from the verdict entered against him as plaintiff in his personal suit.

As to the amount of the damages found for the plaintiff Jenkins, we are of the opinion that $22,500 is excessive. He was hospitalized for nine days, and returned to work two weeks after his discharge. His out of pocket expenses include one doctor bill of $50 and another of $220, an X-ray bill of $25 and a hospital bill of $123.25. It has been recommended that he undergo a plastic surgery operation to reduce his scars somewhat which would cost him $300, with an additional hospitalization bill of about $150 to $175. These total $893.25. He has suffered no actual loss of wages since they were paid him out of his sick leave, but it appears that if he undergoes the plastic surgery operation it would require some two weeks before he could return to work, so an amount for loss of his weekly wage as an assembly and machine worker in the Marine Corps Quartermaster Depot at $72.40 per week would not be inappropriate. We are not unmindful of the fact that this 41 year old man apparently will have some permanent scars (one on his forehead 3 inches long, a 2 inch by 1 inch scar on his cheek, a 1 inch scar on his nose, two 1/2 inch scars and a puncture wound on his jaw, and a 3/4 inch scar behind his ear); nor of the fact that he has suffered a permanent injury in the fifth cranial nerve which has resulted in a loss of sensation in the right lobe of his head and in an impairment of control over a facial muscle resulting in "more or less" of a sagging of the right portion of the upper lip; and that he suffered temporary bruises on his knees; but we are of the opinion that an award of over $21,000 for pain and suffering and disfigurement is grossly excessive. Especially is this true since in so far as the disfigurement is concerned, the plastic surgeon called by Jenkins testified that the scars had "improved a great deal" with the passing of time, and there were prospects for further improvement.

.We have carefully reviewed the evidence and we believe that a fair verdict in favor of the plaintiff Jenkins would be an award of $15,000. The judgment in favor of Antonelli in the sum of $2,500 is affirmed. The judgment in favor of Jenkins is reduced to $15,000, and, as so modified, is affirmed.

OPINION BY MR. JUSTICE MUSMANNO, CONCURRING AND DISSENTING IN PART:

I concur in the general affirmances but dissent from the decision reducing the Jenkins verdict.