**JOHN E. POLHEMUS, Appellee**

v.

**WATER ISLAND, INC., Defendant-Appellant**

No. 12250

United States Court of Appeals
Third Circuit

Argued January 28, 1958

Decided March 7, 1958

*See, also, 252 F.2d 924*

641

W. W. BAILEY AND MAAS & BAILEY, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellant*

JAMES A. BOUGH, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before MARIS, MAGRUDER and STALEY, *Circuit Judges*

MAGRUDER, *Circuit Judge*

This appeal is from a final judgment for the plaintiff, pursuant to a jury verdict, in a personal injury case involving a motor vehicle. The defendant, Water Island, Inc., is the lessee of Water Island, situated in the harbor of Charlotte Amalie and a part of the legislative district of St. Thomas ([Revised Organic Act of the Virgin Islands (1954), § 5(b) prec. 1 V.I.C.], 68 Stat. 498, 48 U.S.C. § 1571). Water Island, Inc., operates an inn on Water Island. As part of the service offered to its guests, it main-

tains a station wagon and a jeep by means of which it furnishes transportation to its guests from the inn down a private road on the island to a dock about three quarters of a mile distant. From the dock a motorboat transports the guests to the mainland of St. Thomas.

Plaintiff and his wife arrived at Water Island as guests of the defendant on February 18, 1955. The next morning plaintiff and his wife, and a number of other guests, desired to be transported to the dock. The jeep had already left for the dock with a group of passengers. The remaining guests, including plaintiff and his wife, elected to be driven down to the dock in the station wagon. Plaintiff's wife, and other pasengers, filled up the seats in the station wagon, so that the plaintiff decided to hang on the outside of the station wagon, standing on the right-hand running board. Since cars drive on the left side in the Virgin Islands, the position assumed by the plaintiff necessarily subjected him to some risk of being brushed off and injured as the station wagon passed another vehicle. Though there was a conflict of testimony on the point, Hugh Smith, the driver of the station wagon and an employee of defendant, insisted that he made known to the plaintiff that he did not like to have the plaintiff riding on the running board, and told him that if he would wait the station wagon would come back for him, but plaintiff replied that he was all right and would stay where he was. At any rate, Smith started the station wagon down the hill, at an excessive rate of speed under the circumstances, according to testimony of plaintiff and his wife, though this was denied by defendant's witnesses. When the station wagon neared the dock it met the jeep coming back up the hill. Though the road was a narrow one, it seemed to the driver of the station wagon that by turning out to the left there would be sufficient clearance for the two vehicles to pass. After going by the front of the jeep, Smith cut the station wagon back

into the road, and the two vehicles passed each other without touching, according to defendant's witnesses, but this was denied in testimony offered on behalf of the plaintiff. However, the plaintiff, anticipating that he might be struck by the lug on the tire carrier on the right-hand side of the jeep, tried without success to crawl into the station wagon, but his exposed left leg was struck by the jeep and he was knocked off and injured.

At the conclusion of the testimony, the trial judge ruled as a matter of law that defendant was liable for plaintiff's injuries, and accordingly he left to the jury only the question as to the amount of damages. With this limitation the jury reported a verdict assessing the plaintiff's damages in the sum of $7,800. Thereupon the court entered the judgment now appealed from ordering defendant to pay the plaintiff the sum of $7,800, together with costs and an attorney's fee.

By appropriate motions under Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C. [App.], the defendant had moved for a directed verdict at the close of all the evidence, and after verdict for plaintiff had moved that the court enter judgment for the defendant, notwithstanding the verdict, joined with a motion for a new trial in the alternative. These various motions were denied by the trial judge, who proceeded to enter the judgment now under review.

Defendant's claim to be entitled to a directed verdict was apparently based upon the theory that the plaintiff himself was guilty of negligence per se in violating the terms of § 9(c) of a criminal ordinance originally passed by the Municipal Council for the Municipality of St. Thomas and St. John on February 14, 1930 (20 V.I.C. § 498), reading in part as follows:

"Riding on the running board or other exterior fitting of an automobile, except by a mechanic engaged in testing the automobile, or by a policeman, is prohibited."

As to this ordinance, the trial judge ruled "that the said section applies to public streets and highways in Saint Thomas, and does not apply to private driveways upon private property, or private roadways upon private property as is the situation in the instant case before us. The Court takes judicial notice that Water Island is private property, consisting only of private roads, and that the roadway upon which this accident happened was not a public street or roadway in the Municipality of Saint Thomas, but was such private roadway in Water Island."

■ We think the trial judge was right in this ruling as to the inapplicability of the ordinance. It is true that the provision of § 9(c) above quoted is expressed in unqualified language, and does not profess to be inapplicable to private premises, whereas other provisions of the ordinance are expressly made applicable only to public highways. See, for instance, §§ 7(c) and 8(b) (20 V.I.C. §§ 461(b), 492). Of course, this may have been a mere oversight. In § 3(a) of the ordinance it was provided, again without specific qualification, that "no motor vehicle shall be operated until it has been registered in the office of the Director, a registration license issued therefor, and the vehicle equipped as provided herein." In § 331 of Title 20 of the recently enacted Virgin Islands Code, which was based upon § 3(a) of the old municipal ordinance, it is now provided that "no motor vehicle shall be operated *upon the public highways of the Virgin Islands* unless it has been registered by the Commissioner of Public Safety and a registration license issued therefor, and unless it is equipped with license plates as required by this chapter." (Italics added.) The revision note attached to § 331 states that the change made by the specific reference to "public highways" was only "for the purposes of clarification."

■ We may point out that, even if § 9(c) of the ordinance were held to be applicable to the private road on

Water Island, still the defendant would not have been entitled to a directed verdict. The breach of the criminal ordinance, by standing on the running board, would only establish the plaintiffs fault or negligence as a matter of law. That would still leave open the question of proximate cause, which really was not in issue here, since the plaintiff was injured by the operation of the particular extra risk which presumably made it negligent for him to ride on the right-hand side of the running board. But treating the plaintiff's conduct as thus amounting to contributory negligence, there would still remain to be determined the question whether the defendant, knowing of the exposed position of danger in which the plaintff had negligently placed himself, had a last clear chance, by the exercise of care, to avert injury to the plaintiff. See Am. L. Inst., Restatement of Torts §§ 479 and 480; § 4 of Title 1 of the Virgin Islands Code. As indicated below, this raised an issue which should have been submitted to the jury.

Though § 9(c) of the ordinance was inapplicable, as ruled by the trial judge, the jury would have to determine whether the plaintiff was guilty of common law contributory negligence in thus riding on the running board.[1]

[1]In its answer to the complaint, defendant set up as separate affirmative defenses that "the plaintiff had knowledge of and assumed the risks incident to his riding on the running board", and that "the plaintiff was guilty of negligence which was a contributing cause of his alleged injuries".

There has been some confusion as to the distinction between assumption of risk and contributory negligence, as was pointed out in Marshall v. Nugent, 1 Cir., 1955, 222 F.2d 604, 610 (C.A. 1st, 1955). Though rule 8(c) F.R.C.P. lists "assumption of risk" as one of the affirmative defenses, nevertheless, in the circumstances of this case, the plaintiff's so-called assumption of risk is only another way of saying that defendant committed no breach of duty to the plaintiff in starting up the station wagon with the plaintiff standing in that exposed position on the running board. It was not a breach of duty for defendant to start up the station wagon, and thus to subject the plaintiff, standing where he was, to some risk of injury, for the simple reason that the plaintiff consented to that particular risk. The plaintiff, however, cannot be deemed to have consented to subsequent negligent driving, if any, by the operator in charge of the station wagon.

As was stated in Marshall v. Nugent, supra, at page 609, a plaintiff is not necessarily negligent of his own safety merely because he voluntarily encounters a known risk; the question must still be answered whether such risk was an unreasonable one. That normally would present a ques-

But if it be found as a fact that the plaintiff was guilty of common law contributory negligence, there would, as above stated, still remain the question of the last clear chance. Defendant had a duty to act with care in operating the station wagon in the known circumstances that the plaintiff had negligently put himself in a position of danger.

What did the evidence show as to whether the defendant was thus negligent? Though the station wagon and the jeep were both being driven by servants of the defendant in the scope of their employment, the plaintiff seems to have concentrated upon establishing that the driver of the station wagon was negligent rather than the driver of the jeep. In his complaint the plaintiff alleged that the operator of the station wagon was negligent "in that he operated same at a high and excessive rate of speed, failed to look in the direction in which he was going, failed to have control thereof, permitted the plaintiff and other passengers to ride on the running board of said station wagon, failed to have the vehicle under control, operated same with defective mechanism, and was negligent in divers other ways", thus proximately causing the plaintiff's injuries.

It is not a usual thing for the trial judge to direct a verdict in favor of the party having the burden of proof, though this has sometimes been done, under extreme circumstances. See Harrison v. Bingheim, 1932, 350 Ill. 269, 182 N.E. 750; Delaware, Lackawanna & Western R. R. Co. v. Converse, 1891, 139 U.S. 469, 472, 11 S. Ct. 569, 35 L. Ed. 213; Union Pacific Ry. Co. v. McDonald, 1894, 152 U.S. 262, 283, 14 S. Ct. 619, 38 L. Ed. 434. See IX Wigmore on

tion for the jury, which would take into account the degree of the risk incurred, balanced against the natural reluctance of the plaintiff to be separated from his wife; and the jury would also consider the fact that, had the plaintiff chosen to ride on the left-hand running board, which apparently he could just as readily have done, he would not have subjected himself to the particular risk of injury. The jury would also have to consider whether plaintiff was negligent in the way he conducted himself just prior to the accident, thus contributing unnecessarily to his own injury.

Evidence (3d ed. 1940) § 2495. It is particularly inappropriate to direct a verdict in favor of the party having the burden of proof where, as here, the only testimony offered by the plaintiff was that, not of disinterested witnesses, but of the plaintiff and his wife, who testified, contrary to the defendant's evidence, that the station wagon was being operated at an excessive rate of speed under the circumstances and that the driver of the station wagon failed to put on his brakes as he approached the jeep. It is true that the driver of the jeep, called as a witness for the defendant, testified that the accident occurred "because the station wagon turned back into the road just a fraction too soon." Of course, that was not equivalent to saying that the driver of the station wagon was negligent; it was merely a statement of what was obvious enough after the event, namely, that if the driver of the station wagon had waited a fraction of a second longer before turning back, the two vehicles would have passed successfully. Assuming, what is not clear from the record, that the driver of the station wagon could safely have stayed on the left side a little longer, it is unfortunate that he did not. Accepting, as we must, for present purposes, defendant's evidence to the effect that the two vehicles passed each other without any part of the station wagon touching any part of the jeep, the razor-edged error of judgment on the part of the driver of the station wagon, in not allowing quite enough time for the plaintiff's exposed left leg to clear the tire lug on the righthand side of the jeep, is not necessarily negligence. That would be for the jury to say, under all the circumstances of the case. And, of course, if the plaintiff were found to be contributorily negligent by reason of his conduct just prior to the impact, it hardly could be found that the defendant thereafter had a last clear chance to avoid the injury.

A judgment will be entered vacating the judgment of

the District Court and remanding the case to that Court for further proceedings not inconsistent with this opinion.