James J. KELLY, Jr. and Eileen Kelly, James K. Kelly, a minor, by his guardian, James J. Kelly, Jr. and James J. Kelly, Jr., in his own right, Plaintiffs,

v.

James Rex FULKERSON, Defendant, Third-Party Plaintiff,

v.

James J. KELLY, Jr., Third-Party Defendant.

Civ. No. 8746.

United States District Court
M. D. Pennsylvania.

Sept. 29, 1967.

Louis A. Fine, Honesdale, Pa., for plaintiffs.

John R. Lenahan, Scranton, Pa., for defendant-third-party plaintiff.

Warren, Hill, Henkelman & McMenamin, Scranton, Pa., for third-party defendant.

SHERIDAN, Chief Judge.

In this personal injury action judgment was entered for the defendant and for the third party plaintiff on a special jury verdict. Plaintiffs and the third party defendant filed a motion for a new trial.

The court has jurisdiction under 28 U.S.C.A. § 1332. The substantive law of Pennsylvania applies.

On August 15, 1964, James J. Kelly, Jr., one of plaintiffs, (Kelly), was the owner and operator of an automobile, with his wife, Eileen, and son, James K., as passengers, when it collided with an automobile operated by James Rex Fulkerson, defendant. Kelly was proceeding northerly on Legislative Route 63026 to an intersection with Route 106, a through highway, on which the defendant was proceeding in an easterly direction. Plaintiffs contended Kelly stopped for the stop sign at the intersection, determined it was safe to cross Route 106, but in doing so was struck by defendant travelling at a high speed with his vehicle out of control. Defendant contended Kelly either did not stop or, if he did, he entered the intersection when it was not possible for defendant to avoid the collision. All three in the Kelly car were injured. Defendant denied negligence, set up the defense of contributory negligence and filed a third party complaint against Kelly for contribution in any recovery by Eileen and James K. Kelly.

The jury found defendant was not negligent, that Kelly was contributorily negligent, and in the third party action

that Kelly was negligent, which negligence was a proximate cause of the accident.[1]

The sole issue raised in the motion is whether the court erred in permitting the jury to know that Kelly had been paid his salary during the period of his disability.[2] Plaintiffs contend this was prejudicial, and that this prejudice so permeated the entire trial that a new trial should be awarded all parties.

In support of his claim for past loss of earning capacity, Kelly testified on direct examination that he was disabled from working for 12 weeks. Defendant requested permission to bring out on cross-examination that Kelly had been paid his salary as a New York City detective during this period. Plaintiffs objected on the ground that payment was a gratuity; they did not contend it was in the nature of workmen's compensation. See City of Philadelphia v. Philadelphia Rapid Transit Company, 1940, 337 Pa. 1, 10 A.2d 434. Plaintiffs stated they were not prepared to offer evidence of the circumstances of payment, whether it was under a New York State statute, or a city ordinance, or a contract; rather, they argued that the payment was a gratuity and under the Pennsylvania collateral source rule Kelly was entitled to recover for the salary he would have earned if he had not been disabled.

In Pennsylvania it is the rule, at least in cases in which payment by the employer does not partake of workmen's compensation or disability benefits, that there can be a double recovery, but plaintiff must "affirmatively [show] that these payments were a gratuity from his employer." Kite v. Jones, 1957, 389 Pa. 339, 132 A.2d 683; Stevenson v. Pennsylvania Sports & Enterprises, Inc., 1952, 372 Pa. 157, 93 A.2d 236. In Schwoerer v. City of Philadelphia, 1950, 167 Pa. Super. 356, 74 A.2d 755, the court said: "Whether a plaintiff may recover loss of wages from a tort-feasor where the injured party has been paid the wages by his employer *is to be determined by the evidence.*" (Emphasis supplied.) Plaintiffs devote a large part of their brief to the proposition that the fact that Kelly did not render any services was sufficient proof of a gratuity. This might satisfy Kelly's burden, but it does not make the ultimate determination any less a jury question. To hold otherwise would make this an issue for the court and leave all other issues to the jury. Plaintiffs attempt to distinguish Kite because of the executive position of the

1.

"SPECIAL VERDICT

"1. Was the defendant, James Rex Fulkerson, negligent and did his negligence proximately cause or proximately contribute to the accident?  Yes ( )  No (x)

"2. Did the actions of defendant, James Rex Fulkerson, constitute wanton misconduct?  Yes ( )  No (x)

"3. Was the third party defendant, James J. Kelly, Jr., negligent and did his negligence proximately cause or proximately contribute to the accident?  Yes (x)  No ( )

"4. Was James J. Kelly, Jr. contributorily negligent?  Yes (x)  No ( )

"5. State the dollar amount of damages suffered by:
(a) James J. Kelly, Jr.  $_____
(b) Eileen Kelly  $_____
(c) James K. Kelly (the child)  $_____

"6. What amount have you included in the damages suffered by James J. Kelly, Jr., set forth in question No. 5a, for wages paid him as a gratuity during the 12 week period he was out of work recuperating from his injures.  $_____

Signed: Kalman Livingston"
Foreman

2. Several other reasons were also assigned, but were abandoned.

plaintiff in that case, and conclude that this and an earlier case, Pensak v. Peerless Oil Co., 1933, 311 Pa. 207, 166 A. 792, stand on their special facts. In Pensak plaintiff's employer was a business owned by himself and members of his immediate family. The court in Kite, citing Pensak, laid down the rule for all plaintiffs, not just those whose circumstances might open the door to fraud.

" * * * The law is clear that if a plaintiff receives his regular compensation during the period of his incapacity he may not recover for his loss of salary or wages unless he affirmatively shows that these payments were a gratuity from his employer: Antonelli v. Tumolo and Archangelo, 390 Pa. 68, 132 A.2d 285; Pensak v. Peerless Oil Co., 311 Pa. 207, 166 A. 792; Schwoerer v. City of Philadelphia, 167 Pa.Super. 356, 74 A.2d 755. Cf. Stevenson v. Pennsylvania Sports and Enterprises, Inc., 372 Pa. 157, 93 A.2d 236. In Pensak v. Peerless Oil Co., 311 Pa., at pages 209, 210, 166 A. at page 792, supra, the Court said:

" 'The item, wages * * * cannot be sustained. It is based on a loss of salary during the time plaintiff was incapacitated. But he did not lose any salary. It was paid to him. True he says it was a gift. * * * His salary was $85 per week and he received it. Characterizing as a gift the money paid to him does not make it so. To permit a recovery of money under the guise of wages lost would, with the facts as they here appear, open a wide door to misrepresentation and fraud in this class of cases.'

"In Stevenson v. Pennsylvania Sports and Enterprises, Inc., 372 Pa. at page 239, 93 A.2d 236, supra, the Court said: ' "Whether a plaintiff may recover loss of wages from a tortfeasor where the injured party has been paid the wages by his employer is to be determined by the evidence. The rule of law is clear: if the payments by the employer were a gratuity or gift, claimant may recover for loss of wages against a third party tortfeasor. The generosity of the employer does no redound to the benefit of the wrongdoer." '

"The plaintiff testified in that case that the money paid to him by his employer was a gift and the Court found that there was ample evidence from which the jury could have concluded that the payments were a gift rather than wages.

"In the case at bar, plaintiff has failed to (1) allege, or (2) prove that the payments of salary which he received as an executive (vice president) from his employer after the accident were a gratuity."

The wage payment cases were summarized in an opinion written by Judge Biggs in Feeley v. United States, 3 Cir. 1964, 337 F.2d 924, 12 A.L.R.3d 1228:

"In summing up Pennsylvania law under this line of cases the best that can be said from the plaintiff's point of view is that where the payment is a true gift by the employer, there can be double recovery. From the defendant's standpoint, on the most recent holding, Kite v. Jones, supra, it might well be argued that there can be no double recovery for lost wages. Regardless of which position is correct, or, indeed, even if neither is correct and some intermediate position is the correct one, a full-blown collateral source rule approach would, in all cases, treat the employer's payment as a gift, thus allowing double recovery. It is clear that Pennsylvania does not go that far, but looks, at the least, for a true donative intent on the part of the employer before it will allow a double recovery, although it is not quite clear what facts will sustain a finding of donative intent. By looking for a true donative intent instead of settling for a fictional one, if it allows a double recovery at all, the Pennsylvania courts seem to recognize that the idea of a gift embodies the generous intention that the benefit be in addition to all other compensation and does not, in itself, embody

notions of compensation for the injury." (Footnote omitted.)

▇▇▇ After the court overruled plaintiffs' objection to the cross-examination, defendant offered to stipulate that the payment was a gratuity, and plaintiffs accepted,[3] thus satisfying their burden of proof. These facts, being judicially admitted, were no longer at issue. 9 Wigmore, Evidence §§ 2588–2594; Hill v. Federal Trade Commission, 5 Cir. 1941, 124 F.2d 104; McNamara v. Miller, 1959, 106 U.S.App.D.C. 64, 269 F.2d 511; New Amsterdam Cas. Co. v. Waller, 4 Cir. 1963, 323 F.2d 20. Since defendant had the right to inquire into the payment, and Kelly had the burden to prove a gratuity, that the stipulation was brought to the jury's attention was not prejudicial.

▇▇▇ Plaintiffs argue that under another line of Pennsylvania cases the payment would have been in the nature of workmen's compensation and the evidence should be excluded. This theory finds support in Pennsylvania case law. Palandro v. Bollinger, 1962, 409 Pa. 296, 186 A.2d 11. Plaintiffs relied only on the "gratuity" theory as a basis for their objection. Since plaintiff did not offer evidence of the circumstances of the payment, the court could not determine if the "compensation" theory was applicable. In Palandro, there was evidence that the plaintiff received compensation from the Pittsburgh "Disability Compensation Fund." In the three cases relied on by the court in Palandro, the compensation feature was before the court. Thus, in Lengle v. North Lebanon Township, 1922, 274 Pa. 51, 117 A. 403, it was the compensation agreement; in Paxos v. Jarka Corporation, 1934, 314 Pa. 148, 171 A. 468, it was the record of the compensation proceedings, and also the federal compensation law under which it was granted; in City of Phila-

delphia v. Philadelphia Rapid Transit Co., 1940, 337 Pa. 1, 10 A.2d 434, it was the State law concerning compensation to city employees, which as in Paxos, formed the very basis of the lawsuit. As Judge Biggs stated in Feeley v. United States, supra, in discussing the compensation and related cases: "However, this aspect of the collateral source rule is founded on the * * * right of subrogation * * * and, therefore, no double recovery." In the instant case, nothing was offered—indeed, counsel stated that nothing would be offered—to show that the payments were, or were in the nature of, compensation. The mere fact that Kelly was a city detective was insufficient.

▇▇▇ Plaintiffs belatedly try to supply this deficiency in proof. In their supplemental brief they state, "Unfortunately, the parties and the Trial Judge at the trial did not have before them a definitive explanation of the reason plaintiff was paid his salary during his absence. This information has finally been obtained * * *," and that "the true nature of the payment does not appear in the trial record." Plaintiffs then for the first time present information on the police pay policy of New York City. Section 434a–10.0 of the Administrative Code of the City of New York, governing salaries of first grade patrolmen, provides that deductions from pay for or on account of lost time for sickness and disability shall be in such amounts as the commissioner may by rules and regulations prescribe. Police Department Directive 167, effective September 1, 1961, provides for full pay for police force members on sick report. Plaintiffs urge the court to take judicial notice of these requirements. Plaintiffs recognize that the court need not take notice of matters not brought to its attention. Gediman v. Anheuser Busch, Inc., 2 Cir. 1962, 299 F.2d 537. A Pennsylvania

---

3. Plaintiffs stipulated only because the court had ruled against them. The alternative was to offer evidence.

court would take judicial notice of statutes of sister states; a district court sitting in Pennsylvania should also take such notice. Harry L. Sheinman & Sons, Inc. v. Scranton Life Insurance Co., 3 Cir. 1942, 125 F.2d 442. Until compelled to do so by statute, Pennsylvania courts did not take judicial notice of ordinances of municipalities in Pennsylvania. Lawrence McFadden Co. v. City of Philadelphia, 1915, 59 Pa.Super. 44; 28 P.S. § 301; Norate Corp., Inc. v. Zoning Bd. of Adjustment, 1965, 417 Pa. 397, 403, 207 A.2d 890. A fortiori, it would not take judicial notice of New York City ordinances which must be pleaded and proved. Plaintiffs recognize that since the ordinance in question does not direct, but only permits, wage continuation payments in an amount determined by the commissioner, such payments partake more of a gratuity than workmen's compensation. Therefore, they have not been affected by the deficiency in the record.

Finally, even if the court erred in not keeping the evidence of payment from the jury, the error was cured by the charge. After the usual charge on past loss of earning power, the court told the jury:

"Now, there is a stipulation here that Mr. Kelly was out of work—I think 12 weeks—from his duties as a detective in New York City. But it has also been agreed that New York City gratuitously paid him his salary. I charge you, it is your duty to follow this instruction—if you find for Mr. Kelly, he would be entitled to that even though the City of New York voluntarily or gratuitously paid it. That is the law of Pennsylvania and it would be your duty to award it to him."

In view of the findings in the special verdict, it is clear that the jury determined that Kelly failed to stop for the stop sign or yield the right of way and that defendant could not have avoided hitting the Kelly vehicle.

The motion for a new trial will be denied.