**Richard T. GILPIN and Ruth Gilpin, his wife, Appellees,**

v.

**Alyssa E. LANGAN, Appellant.**

No. 85–5513.

United States Court of Appeals, Third Circuit.

Argued Feb. 18, 1986.

Decided May 8, 1986.

James M. Scanlon, (Argued), Scanlon, Howley, Scanlon & Doherty, Scranton, Pa., for appellant.

David A. Howell, (Argued), Clarks Summit, Pa., for appellees.

Before: WEIS and SLOVITER, Circuit Judges, and POLLAK,* District Judge.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this diversity personal injury case, the district court granted a directed verdict for plaintiff on the question of liability. As the driver of one of two automobiles involved in a head to head collision, the plaintiff's conduct would be a matter for consideration under the state's comparative negligence statute. We conclude that the issue of the plaintiff's possible negligence should have been submitted to the jury. Accordingly, we will vacate a judgment for plaintiff and remand for a new trial.

After entry of the directed verdict, the jury returned a damage award of $225,000. Motions for a new trial or remittitur were denied, and defendant appealed.

The factual scenario is an uncomplicated one involving a center of the road automobile collision on Route 307, a two-lane macadam road in rural Wyoming County, Pennsylvania. The accident occurred on April 9, 1982 at approximately 12:10 A.M. The road surface was dry, but there was some snow on the berm.

Plaintiff Richard Gilpin testified that he was alone in his automobile driving south.[1] As he approached a narrow bridge about fifteen feet in length, Gilpin first saw the defendant's auto northbound on the same road. At that sighting, the defendant's vehicle was about 300 feet away and travelling in its proper lane. When the two cars were approximately 200 feet apart, Gilpin noticed that the other car was crossing into his lane. He braked, but the left fronts of the two vehicles collided on the bridge. Gilpin recounted that he must have lost consciousness at that point because he did not immediately realize that the defendant's car had passed him.

After impact, the defendant's car continued past the plaintiff's and stopped on the berm completely off the west side of the road. Gilpin's car remained on the bridge, and he testified that "The front end of it was knocked to the left maybe about a foot or so."

On cross-examination, Gilpin said he was about 100 feet from the bridge when he noticed that defendant was coming into his lane. He also stated that on his right was a shoulder and a driveway about fifteen to twenty feet north of the concrete bridge abutment.

The state policeman who investigated the accident testified that Gilpin's car had left skid marks of forty-one feet. Most of the debris from the accident was toward the northern end of the bridge in the center of the roadway. At the scene, defendant said she had no memory of what had happened. She seemed confused and dazed when talking to the officer and stated that she must have "either fell asleep or passed out." The policeman did not recall whether defendant had struck her head on the windshield.

No other witnesses testified about the accident, and defendant did not take the stand.

At the conclusion of the testimony, the trial judge stated that he found "no testimony in the record which would constitute negligence on the part of this plaintiff," and he directed a verdict for plaintiff on liability. Counsel for defendant objected, stating that in the area before plaintiff reached the bridge there was "a private driveway and a wide berm" and plaintiff might have taken evasive action to avoid the collision. Therefore, he could have

---

* The Honorable Louis D. Pollak, United State District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. Technically, there are two plaintiffs in this case, Richard Gilpin, who sued to recover for his personal injury, and his wife, Ruth Gilpin, who brought a derivative claim for loss of consortium. For convenience sake, however, the singular "plaintiff" is used throughout the opinion.

been "negligent to some percentage or degree."

On appeal, defendant contends that the trial court erred in sua sponte directing a verdict for plaintiff and that the award was excessive.

The parties do not dispute that the substantive law of Pennsylvania controls. The question whether state or federal standards apply in determining when an issue should be submitted to the jury has caused some difficulty. *See 9 Wright & Miller, Federal Practice and Procedure* § 2525 (1972). However, we need not pause to discuss this interesting issue because in previous cases we have concluded that state and federal standards are the same in negligence cases arising under Pennsylvania law. *Vizzini v. Ford Motor Co.*, 569 F.2d 754, 758 (3d Cir.1977); *Denneny v. Siegel*, 407 F.2d 433 (3d Cir.1969).

We begin with the general proposition that a directed verdict in favor of the party having the burden of proof in a negligence case is unusual. *Polhemus v. Water Island, Inc.*, 252 F.2d 924 (3d Cir.1958). Even in a Jones Act case, where workmen's compensation overtones create a highly favorable climate for the plaintiff, we have held that a directed verdict in his favor is not appropriate, particularly when he is the chief witness. *See Mihalchak v. American Dredging Co.*, 266 F.2d 875 (3d Cir. 1959).

Pennsylvania courts have also demonstrated an aversion to directing a verdict for the plaintiff in personal injury cases. In *Gatenby v. Altoona Aviation Corp.*, 268 F.Supp. 599 (W.D.Pa.1967), *aff'd*, 407 F.2d 443 (3d Cir.1968), the district court summarized Pennsylvania law as holding that when the liability evidence rests on the plaintiff's own testimony, his interest in the outcome requires that the issue be submitted to the jury. At least the jury's consideration is necessary where the plaintiff's conduct allegedly played a part in the incident. In *Gatenby* and *Cowger v. Arnold*, 460 F.2d 219 (3d Cir.1972), this court upheld judgments n.o.v. for the plaintiffs because they were passengers whose conduct was in no way connected with the mishaps. To the same effect, see *Krupa by Krupa v. Williams*, 316 Pa.Super. 408, 463 A.2d 429 (1983).

In an earlier case, the Pennsylvania Supreme Court had disapproved a directed verdict in favor of plaintiff passengers against a taxi company. The court emphasized the prerogative of the jury to pass on oral evidence in negligence cases. *Kopar v. Mamone*, 419 Pa. 601, 215 A.2d 641 (1966). The trial court had also directed a verdict in favor of another defendant, however, and the result in *Kopar* may be better explained as resting on the ground that some evidence supported a finding of liability against that defendant as well as the cab company.

In 1976, Pennsylvania adopted a comparative negligence statute, 42 Pa.Cons.Stat. Ann. § 7102, providing that the plaintiff's negligence would not bar recovery unless it exceeded that of the defendant. That law abolished the contributory negligence doctrine.

Under the contributory negligence rule, even a slight amount of negligence would theoretically bar a plaintiff from any recovery. In practice, however, courts were very circumspect in directing a verdict for the defendant, doing so only in cases where the evidence of contributory negligence was strong. *Dougherty v. Philadelphia Nat'l. Bank*, 408 Pa. 342, 184 A.2d 238 (1962); *Kurtz v. Philadelphia Transp. Co.*, 394 Pa. 324, 147 A.2d 347 (1959). Because the contributory negligence rule was recognized as having a draconian effect, opportunities were provided for jury amelioration in fact, if not in law.

With the advent of comparative negligence, the role of the jury did not diminish but perhaps grew larger. The determination that a plaintiff's negligence amounted to fifty-one percent of the causal conduct and thereby barred recovery, rather than to forty-nine percent, leading only to a reduction of the award, is peculiarly a matter on which reasonable minds may differ. By its nature, the issue is one better resolved by the jury than by the court.

On reviewing cases from other comparative law jurisdictions, the Pennsylvania Superior Court recognized the importance of the jury's role. The court quoted from a Florida case,

"Because of the very nature of the comparative negligence doctrine, situations in which directed verdicts will be appropriate will occur with even less frequency, particularly in cases where the plaintiff's own negligence is in issue. We do not here express an opinion as to whether a directed verdict should *ever* be granted, where the negligence of both parties is at issue. We do, however, believe that such cases will be extremely rare."

*Petroleum Carrier Corp. v. Gates*, 330 So.2d 751, 752 (Fla.App.1976). The Superior Court conceded that "a case may arise in which it may be proper to hold as a matter of law the plaintiff's negligence was equal to or greater than the defendant's, although it does seem likely that such a case will be rare." *Peair v. Home Ass'n. of Enola Legion No. 751*, 287 Pa.Super. 400, 408, 430 A.2d 665, 669 (1981).

The Superior Court reaffirmed its position in *Beary v. Pennsylvania Elec. Co.*, 322 Pa.Super. 52, 469 A.2d 176 (1983), stating that the totality of causal negligence is a matter properly determined by the jury and that only in rare cases could a court hold as a matter of law that the negligence of one party is equal to or greater than that of the other.

■ Similarly, it follows from these cases that only in exceptional instances should a court preempt the determination of whether the plaintiff's conduct contributed to some degree, even if only slightly, to his injury.

A directed verdict deprives a party of jury fact-finding determination, and therefore such rulings should be reserved for clear cases. *Patzig v. O'Neil*, 577 F.2d 841 (3d Cir.1978). In deciding whether an issue of fact should be submitted to a jury, the trial court applies the same test used in determining a motion for judgment n.o.v. —a standard that also guides us on appeal.

*Maggipinto v. Reichman*, 607 F.2d 621, 624 n. 7 (3d Cir.1979); 9 Wright & Miller, *Federal Practice and Procedure* § 2524.

■ Because the district court directed a verdict for plaintiff, we must examine the record in the light most favorable to defendant, giving her the benefit of all reasonable inferences from the evidence. Although the plaintiff's testimony made out a strong case of negligence on the defendant's part, this in itself is not enough to justify the grant of a directed verdict. In addition, the evidence must establish the plaintiff's own freedom from negligence.

Gilpin's testimony was generally exculpatory but not completely so. He admitted seeing the defendant's auto coming into his lane when it was 200 feet away and he was 100 feet from the north end of the bridge. These figures, of course, were approximations, but there was evidence that for some distance short of the bridge he could have moved to the right onto the berm.

Responding to this point in his memorandum denying post-trial motions, the district judge stated that "[a] more appropriate reading of the testimony shows strongly that the plaintiff had no choice but to continue along his route." But in ruling on a motion for a directed verdict the "appropriate reading" gives the benefit of inferences to the party opposing the motion; it does not rely on inferences that an impartial judge might draw. Where evidence exists from which a reasonable juror could draw a contrary conclusion, "the disputed fact ... must go to the jury, no matter how strong or persuasive may be the countervailing proof." *Heffernan v. Rosser*, 419 Pa. 550, 555, 215 A.2d 655, 657 (1966).

Other inferences were implicit in the evidence submitted by the state trooper, the only disinterested witness. He said that the plaintiff's car skidded for forty-one feet before impact, which perhaps could raise a question in the jury's mind about the plaintiff's attentiveness to the defendant's approach. More serious is the policeman's testimony that the debris was in the center of the road. In addition, if the plaintiff's

statement that his front end was knocked to the left a foot or so were construed against him, the jury might have inferred that before the collision, the front of his car was over the center line.

Evidence existed, therefore, that might have led the jury to believe that both cars were partially in the wrong lane. In two previous center of the road collision cases, Pennsylvania appellate courts held that a jury could have determined that both drivers were at fault despite their respective assertions of being in the proper lane. *See Antonelli v. Tumolo*, 390 Pa. 68, 132 A.2d 285 (1957); *Walker v. Martin*, 214 Pa.Super. 287, 257 A.2d 619 (1969). In the latter case, the court commented that debris near the center line was evidence which, when combined with the driver's testimony, could have supported the conclusion that both drivers were negligent. In those circumstances, removal of the possibility of joint negligence from the jury's consideration was error.

Concededly, the evidence of the plaintiff's possible negligence in this case is not strong, and on this record the likelihood that the jury would find both drivers equally at fault is slim. Nevertheless, there was some evidence from disinterested testimony and from physical conditions at the scene that should have been assessed by the jury. In short, this was not one of those "rare cases" in which the court may properly direct a verdict.

Because we find it necessary to remand for a new trial, we do not pass on the excessiveness of the verdict, a point which causes us some concern.

Accordingly, the judgment of the district court will be vacated, and the case will be remanded for a new trial.

SLOVITER, Circuit Judge, dissenting.

Ordinarily a panel majority's view "that the issue of the plaintiff's possible negligence should have been submitted to the jury" evokes at most a mild disagreement from the third panel member who may see the facts differently. In this case, I am concerned not only because I do indeed disagree with the majority's view of the relevant facts and the inferences to be drawn therefrom, but because I believe that the majority errs in its view that Pennsylvania's adoption of comparative negligence throws into question the appropriateness of ever using a directed verdict for a plaintiff. It may be useful to articulate the opposing view so that the Pennsylvania courts can correct the majority's interpretation, if they are inclined to do so.

Initially, I assume that the majority has rejected the appellant's position that Rule 50(a) does not allow a judge, sua sponte, to grant a directed verdict for the plaintiff. On its face, Rule 50(a) neither requires a motion by a party nor prohibits a judge from directing a verdict sua sponte. There is no reason to superimpose such requirements on the Rule. *See Peterson v. Peterson*, 400 F.2d 336, 343 (8th Cir.1968).

Of course, I do not disagree with the majority that a directed verdict, particularly in favor of the party bearing the burden of proof, must be used sparingly. Nonetheless, it has long been an accepted principle that in an appropriate case the court has a responsibility of directing the verdict. As the Supreme Court of the United States stated in *Brady v. Southern Railway Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943):

> When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non-suit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment notwithstanding the verdict. By such direction of the trial the result is saved from the mischance of speculation over legally unfounded claims.

The courts have provided various formulations of the directed verdict standard. *See, e.g., Kim v. Coppin State College*, 662 F.2d 1055, 1059 (4th Cir.1981) ("the district court is entitled to grant a directed verdict even though some evidence supports the

opposite position so long as 'there are no controverted issues of fact upon which reasonable minds could differ' "); *Gutierrez v. Union Pacific Railroad Co.*, 372 F.2d 121, 122 (10th Cir.1966) ("the court should direct a verdict where the evidence is without dispute, or is conflicting but of such conclusive character that if a verdict were returned for one party the exercise of sound judicial discretion would require that it be set aside").

This court has described the standard as viewing the record in a light most favorable to the opposing party and determining "whether, as a matter of law, the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." *Denneny v. Siegel*, 407 F.2d 433, 439 (3d Cir.1969). *See also Mihalchak v. American Dredging Company*, 266 F.2d 875, 877 (3d Cir.1959) (in granting a directed verdict, a judge "must be able to say not only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding").

Pennsylvania also accepted the general principle that a directed verdict may be granted in appropriate cases. For example, in *Lott v. Guiden*, 205 Pa.Super. 519, 523, 211 A.2d 72, 74 (1965), the court affirmed a directed verdict for plaintiff, stating, "[i]n directing a verdict against one party the court must accept as true all the evidence of that party which supports his contention, except such testimony as is inherently improbable, or is contradicted by unimpeached writings or unquestioned physical facts, and must reject all the adverse testimony of the party seeking a directed verdict."

The majority suggests that the advent of comparative negligence has effected a major change in this regard, and that a directed verdict, at least for a plaintiff, may no longer be permissible. *See* Majority at 1037–1038. I see no reasoned basis for such a suggestion. The distinction between comparative negligence and contributory negligence for this purpose is illusory. In a contributory negligence jurisdiction, any negligence by plaintiff would bar plaintiff's recovery. Thus, if there were any evidence of plaintiff's negligence as to which reasonable minds could differ, a directed verdict for plaintiff would be improper. In a comparative negligence jurisdiction, plaintiff's negligence would bar recovery only if plaintiff's negligence was greater than the causal negligence of the defendant. *See* 42 Pa.Cons.Stat.Ann. § 7102(a) (Purdon 1982). If there were any evidence of plaintiff's negligence as to which reasonable minds could differ, once again the issue would have to be referred to the jury, this time not only to determine if plaintiff were completely precluded from recovery but to determine the amount of plaintiff's preclusion.

Of course, the onset of comparative negligence increases the number of cases to be sent to the jury and decreases the number of directed verdicts (or nonsuits) *for a defendant* because the jury must now weigh the amount of plaintiff's negligence in relation to that of defendant's. The two Pennsylvania Superior Court cases cited by the majority, *Beary v. Pennsylvania Electric Co.*, 322 Pa.Super. 52, 469 A.2d 176 (1983), and *Peair v. Home Association of Enola Legion No. 751*, 287 Pa.Super. 400, 430 A.2d 665 (1981), do nothing more than illustrate this obvious fact. They do not suggest that comparative negligence effected any change in the appropriateness of a directed verdict *for a plaintiff*, since under either system such a direction can be granted only when reasonable minds could not differ on the lack of evidence to show plaintiff's negligence. The trial judge's authority to determine if a directed verdict for plaintiff is appropriate has not changed one iota by the adoption of comparative negligence.

In reviewing the evidence, it is important to note that the plaintiff's version of the manner in which the accident occurred is uncontradicted. Defendant did not testify or offer any contrary evidence. Plaintiff was driving to work in Scranton in the

southbound lane of Route 307, a two-laned paved highway. As Gilpin approached the creek bridge, defendant Langan's car came around the curve and also approached the bridge. When the two cars were about 200 feet apart, defendant's car *moved over the center line* into plaintiff's lane. Plaintiff testified that he immediately hit his brakes and moved as far right as possible but was unable to leave the road because of the bridge and its concrete abutment. Defendant's car collided with his and plaintiff was thrown into the windshield, striking his left leg, hip, shoulder and elbow.

Officer Ulkoski, the Falls Township police officer who investigated the accident, testified that when he arrived at the scene of the accident, defendant's car and plaintiff's car were *both on plaintiff's side of the road,* and that there was debris from the accident in the center of the road. Officer Ulkoski also testified that when he asked defendant Langan if she had any memory of what happened, she stated, "No. I either fell asleep or passed out. I don't remember what happened." App. at 70a. He also testified that he found skid marks from plaintiff's car measuring 41 feet and no skid marks for defendant's car.

After testimony was completed, the district court directed liability for plaintiff because

> there is no testimony in the record which would constitute negligence on the part of this Plaintiff in the case.
>
> There is uncontradicted and undenied testimony that the Defendant's car crossed over the center line at a point where both automobiles were passing over a bridge and upon which the Defendant, in my judgment, was found to have been negligent and caused this accident.

App. at 170a.

There is absolutely no evidence in this case from which any reasonable juror could find negligence on the part of plaintiff. This is not a case like *Polhemus v. Water Island, Inc.,* 252 F.2d 924 (3d Cir.1958), cited by the majority, where plaintiff's testimony showed he was standing on the

running board of a station wagon when he was injured. Instead, these facts fit directly into the Pennsylvania precedent holding that "[i]n 'wrong side of the road' accidents, i.e., where one car suddenly enters the lane of oncoming traffic and an accident occurs.... our courts have held that unless the defendant can explain his presence in the wrong lane, negligence can be inferred." *Fair v. Snowball Express, Inc.,* 226 Pa.Super. 295, 298, 310 A.2d 386, 388 (1973). *See also Campbell v. Fiorot,* 411 Pa.Super. 157, 191 A.2d 657 (1963).

The uncontradicted evidence showed that defendant was on plaintiff's side of the road. Defendant did not explain her presence there; indeed, she presented no evidence about the accident and had admitted to the investigating police officer that she had no knowledge of how she came to be there because she either "fell asleep or passed out." Defendant's argument that she nonetheless is not liable because plaintiff was contributorily negligent by not pulling off the road is based on pure speculation.

The district court's rejection of that argument is persuasive:

> We recognize that the Defendant skillfully argues that on cross-examination the Plaintiff indicated there were some areas just prior to entering the bridge where he perhaps could have turned off the highway in order to avoid the accident. A review of the testimony however, reveals that this would be no better than a Hobson's choice for the Plaintiff since turning off the highway just prior to this accident would have given him choices which might have ended up in his turning into the creek or running into the bridge abutment even if one were to conclude by a liberal reading of the cross-examination that he indeed had time at all to turn to his right prior to entering the bridge. A more appropriate reading of the testimony shows strongly that the Plaintiff had no choice but to continue along his route and that he tried his best within the confines of the bridge area to turn to the right and to brake,

but could not avoid the accident because the Defendant ran directly into his car while he was properly proceeding in his own lane.

This was one of those instances where there was no testimony on record upon which the jury could reach a different conclusion.

App. 184a–185a.

If this is not an appropriate case for a directed verdict for plaintiff, then I am hard pressed to imagine one.