177 N.J. Super. 639 (1981)
427 A.2d 615
RICHARD WOODSUM AND JUDITH WOODSUM, PLAINTIFFS-APPELLANTS,
v.
TOWNSHIP OF PEMBERTON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY ET. AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 10, 1981.
Decided March 11, 1981.
*641 Before Judges FRITZ, POLOW and JOELSON.
Richard M. Sevrin argued the cause for appellants (Gertner, Gertner & Sevrin, attorneys).
Frederick W. Hardt argued the cause for respondents R. Louis Gallagher and Township of Pemberton (Sever & Hardt, attorneys *642 for respondent R. Louis Gallagher; Polino & Williams, attorneys for respondent Township of Pemberton).
The opinion of the court was delivered by POLOW, J.A.D.
Plaintiffs seek compensatory and punitive damages against defendant municipality, its elected officials, certain of its employees, the municipal engineer and others for destruction of their single-family dwelling and other losses incidental thereto. They assert that they were compelled to abandon their home when they were deprived of their deep well water supply, allegedly the result of construction of two new municipal wells which drew from the same underground reservoir. For purposes of a summary judgment motion, it was stipulated that although plaintiffs could have restored their water supply by extending the depth of their well at a cost of between $750 and $1,700, they lacked sufficient funds to do so. Hence, the well was not deepened and due to lack of water plaintiffs left their dwelling in or about January 1973. Subsequently, the abandoned residence suffered substantial losses by reason of theft of personal property and vandalism despite plaintiffs' efforts to provide protection and periodic inspections. The stipulation fixes a value of the premises in question "in 1972 at $23,500, with water, and $22,000 in January 1973, without water...." Land value is stipulated at $5,000. In their complaint plaintiffs claim damages for negligence in the construction and operation of the municipal wells, they assert a second count for negligent failure to act after due notification of the difficulties and, in the third count, they allege a condemnation of their property without just compensation.
Although the municipality and its codefendants contest the allegation that the new municipal wells interfered with plaintiffs' water supply, nevertheless, for the purposes of defendants' summary judgment motion only, such interference was assumed. The trial judge, in a reported opinion, granted summary judgment *643 for defendants, ruling that there had been no "taking," that defendants were immune under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., and that the action of the municipality did not violate plaintiffs' rights under the Civil Rights Act, 42 U.S.C.A. § 1983. 172 N.J. Super. 489 (Law Div. 1980).
We affirm dismissal of the causes of action based upon negligence and based upon alleged civil rights violations, substantially for the reasons stated by the trial judge. We conclude that the subsequent decision of our Supreme Court in Costa v. Josey, 83 N.J. 49 (1980), has no impact on the outcome here since the concept of municipal immunity for exercise of judgment or discretion in the design and construction of public works or improvements remains intact. The only additional assertion of fact by plaintiffs here beyond improper design and construction, which we can discern in analyzing the entire record is the suggestion that the municipality was guilty of negligence in failing to advance for plaintiffs the $700 or $900 cost projected during oral argument in the trial court, to deepen their well. It has been taken for granted throughout that such an extension of the depth of the well would have restored the water supply and prevented the alleged consequential damage. We conclude that neither failure to advance the funds nor failure to deepen the well for plaintiffs amounts to an act of negligence from which the compensatory damages claimed are foreseeable consequences.
We also affirm the summary judgment dismissing the third count of the complaint alleging a "taking" of private property without just compensation. However, we do so without consideration of the substantive issues addressed by the trial judge which we find are not appropriate for resolution in this case. See DeRose v. Byrne, 139 N.J. Super. 132 (App.Div. 1976).
In such a case we should not and do not undertake to decide, by that which constitutes an advisory opinion more than anything else, the far-reaching issues and important policy questions inherent in the litigation. Oxfeld v. New Jersey State Bd. of Ed., 68 N.J. 301 (1975); Sente v. Clifton Mayor and Coun., 66 N.J. 204 (1974). [at 134]
*644 We are fully satisfied that the taking issue is moot and was moot when decided by the trial judge because plaintiffs had already received, by settlement with one defendant, more than they could have recovered had they been entirely successful in their claim. On March 27, 1978, more than 1 1/2 years before the decision of the trial judge, plaintiffs settled with defendant Layne-New York Co., Inc., the well-driller employed by the municipality. A stipulation of dismissal was executed and filed in consideration of payment to plaintiffs of $1,850.
Since we agree with the trial judge's assessment of the limited measure of damages recoverable if there had been a taking, we conclude that no recovery beyond the $1,850 paid in settlement could have been realized. If there had been a taking, plaintiffs would be limited to the traditional measure of damages, i.e., either (1) the value of property actually taken, plus diminution in value of the remainder, as of the date of taking, or (2) the difference between the value of the entire property before the taking and value of the remainder after the taking. South Orange v. Alden Corp., 71 N.J. 362, 367 (1976); Washington Mkt. Enterprises v. Trenton, 68 N.J. 107, 117 (1975); State v. Cooper Alloy Corp., 136 N.J. Super. 560, 567-568 (App. Div. 1975). Hence, we conclude that had there been a taking, damages would not be recoverable beyond the diminution of the value of the property at the time of the taking computed by deducting its value immediately after the taking, without water, from its value immediately before the taking, with water. South Orange v. Alden Corp., supra; Washington Mkt. Enterprises v. Trenton, supra; Middlesex Cty. v. Clearwater Village, Inc., 163 N.J. Super. 166, 174, 175 (App.Div. 1978), certif. den. 79 N.J. 483 (1979). "The measure of damages does not include any special damages suffered through frustration of the owner's plans." 4A Nichols, Eminent Domain (3 ed. 1975), § 14.241(4). See Middlesex Cty. v. Clearwater Village, Inc., supra, 163 N.J. Super. at 177.
Here, the stipulated maximum cost of extending the well to restore the water supply to the premises was $1,700. It was also *645 stipulated that the difference in value of the entire property with water before the "taking" as compared with its value without water after the "taking" when plaintiffs elected to leave, was $1,500. Plaintiffs have already received compensation in excess of the greater of those two sums. Since they have already realized more than the maximum entitlement which would be recoverable under the public "taking" theory, it is unnecessary to reach the broad and far-reaching constitutional issues dealt with in the trial judge's opinion and we decline to address them. Hence, we neither approve nor disapprove his expressions of opinion in this regard. See Public Serv. Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237, 243, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952); Siler v. Louisville & Nashville R.R. Co., 213 U.S. 175, 193, 29 S.Ct. 451, 455, 53 L.Ed. 753 (1909); Barnett, "Avoidance of Judicial Decision Upon Constitutional Ground When Decision Can Be Based Upon Another Ground," 28 Ore.L.Rev. 201 (1949); Note, "Avoidance of Constitutional Issues In Civil Rights Cases," 48 Colum.L.Rev. 427 (1948). We leave for another day, under more compelling circumstances, the issues of whether the municipal action involved a "taking" and whether the trial judge correctly ruled that "water taken by the township was not water to which plaintiffs had any right, ...." Woodsum v. Pemberton, supra, 172 N.J. Super. at 528.
The trial judge was unable to discern, based on the evidence before him on the summary judgment motion, whether the township engineer was a municipal employee. Id. at 521. If he was not, the judge posited that he would not be immune under the Tort Claims Act. Ibid. Furthermore, an individual not protected by immunity could be the proper subject of a suit for damages under the negligence claim stated by plaintiffs herein. Steward v. Magnolia, 134 N.J. Super. 312, 230 (App.Div. 1975), certif. den. 68 N.J. 481 (1975). See Meeker v. East Orange, 77 N.J.L. 623 (E. & A. 1909); Hanks & Hanks, "The Law of Water in New Jersey: Groundwater," 24 Rutg.L.Rev. 621, 638-639 (1970). See, also, Katz v. Walkinshaw, 141 Cal. 116, 74 P. 766 *646 (Sup.Ct. 1903). Nevertheless, the action was dismissed as to all defendants, including the engineer.
The township water plant here withdrew water from township land for distribution and sale unconnected with any beneficial enjoyment of the land from which it was taken. As a result it was stipulated for the summary judgment motion that plaintiffs' well was thereby diminished in flow to the extent that their existing well no longer drew water. Because the engineer may not be immune from a real or supposed cause of action in tort, we consider the measure of plaintiffs' damages if his actions were negligent. The general tort rule in water diversion disputes has been stated as follows:
The measure of damages for a wrongful interference with, or obstruction or diversion of percolating waters depends upon the character of the injury as permanent or merely temporary. Where the injury is permanent in character, the measure of damages is ordinarily the diminution in the market value of the land. Where the injury is temporary in character, the measure of damages has in some cases been held to be the reasonable cost of remedying the condition, while in other cases it has been held to be the diminution in the rental value of the property, or in the value of its use. [78 Am.Jur.2d, Waters § 173 (1975); footnotes omitted]
Based upon the stipulated facts, any damage under the allegations of negligence in the design, construction or operation of the new municipal wells was temporary since, before plaintiffs abandoned their residence, they knew that the problem could be eliminated and further damage thus prevented by extending the depth of their well at an expense of between $750 and $1,700. Since such an expenditure would have restored the water supply and thus eliminated the problem, plaintiffs' abandonment of the premises and the consequent thefts and vandalism were not a foreseeable proximate result of any negligence by the engineer in the design, construction or maintenance of the new municipal wells. Plaintiffs' failure to deepen their well and their voluntary abandonment of the premises was, under the circumstances, the intervening efficient cause of any additional losses beyond the cost of repairing the well. See Hoppe v. Ranzini, 158 N.J. Super. 158, 166 (App.Div. 1978); Marty v. Erie R.R. Co., 62 N.J. Super. 458, 469 (App.Div. 1960) certif. den. 33 *647 N.J. 387 (1960). Thus, damages for negligent design, construction or operation of the new municipal wells would be measured by the cost of restoring plaintiffs' water supply. Here again, since plaintiffs have already recovered more than the maximum cost stipulated for deepening the well, no further damages would be recoverable against the engineer if in fact he is an independent contractor and thus unprotected by immunity.
For the reasons set forth and on the limited basis asserted in this opinion, summary judgment granted in favor of all defendants is affirmed.