463 A.2d 429

**David E. KRUPA, A Minor By His Parents and Natural Guardians James R. KRUPA and Mary Jane Krupa, and James R. Krupa and Mary Jane Krupa, in Their Own Right, and Mary Jane Krupa and James R. Krupa, Her Husband, Appellants,**

**v.**

**Lawrence O. WILLIAMS and Shirley V. Williams.**
**(Four cases)**

**Appeal of Lawrence O. Williams**

Superior Court of Pennsylvania.

Argued April 26, 1982.

Filed July 1, 1983.

412

Dennis St. J. Mulvihill, Pittsburgh, for appellants (at Nos. 409, 552 and 725) and for appellees (at No. 701).

Lee C. McCandless, Butler, for appellant (at No. 701) and for appellees (at Nos. 409, 552 and 725).

Before BECK, MONTEMURO and POPOVICH, JJ.

BECK, Judge:

This case arises from a serious car accident which occurred on December 6, 1975. At about 4:30 a.m. James Krupa and his teenage son David were driving north on Route 8 toward Butler, Pennsylvania for a day of hunting. Richard Hoffman, not previously known to the Krupas, was driving north also, with passenger Charles Almond. James Krupa drove into the left northbound lane, overtaking Hoffman in an effort to pass him on the four lane undivided highway. At the same time, Lawrence Williams was driving southbound on his way home from an evening with friends. In the accident that then occurred the Krupa and Hoffman cars moved to the right, Krupa's car sideswiped Hoffman's car, Krupa's car's right side scraping Hoffman's car's left side. An instant later the northbound Krupa's car and the southbound Williams' car collided head-on in the northbound lane. Hoffman and Almond were uninjured and remained on the scene after the accident. They observed both the accident and its consequences.

The Krupas and Williams, all badly hurt, were removed from their cars by a local volunteer fire department rescue team and taken to hospitals for treatment. State police officers took photographs and measurements of the scene

for a detailed report. The injuries of the victims looked so bad it "looked like a fatality." (103a).

James Krupa suffered some facial cuts and missed about 6 weeks of work. David Krupa suffered a severe blow to his head resulting in the complete loss of the bone of his forehead and damage to the frontal lobes of his brain. At the time of trial he had undergone four operations to repair this condition.

In the litigation that ensued, the Krupas claimed (1) damages for the injuries to David, (2) medical expenses for David, (3) damages for injuries to James, (4) loss of consortium by James' wife Mary Jane, and (5) damages for severe emotional shock to James at witnessing the injury to David.

At trial, the court declared a compulsory nonsuit on claims 2, 3, 4, and 5. The court also directed a verdict of liability against Williams for Count 1 and submitted the question of the amount of damages to the jury. The jury returned a verdict for David Krupa in the amount of $800,-000.00.

Both the Krupas and Lawrence Williams have appealed orders of the trial court. Three separate appeals are before this court and are disposed of in this opinion. They are:

701 Pittsburgh 1980: Williams appeals the directed verdict on the evidence of liability and appeals the $800,000.00 verdict as excessive.

725 Pittsburgh 1980: James and Mary Jane Krupa appeal the order that required them to proceed to trial on May 12, 1980 with an attorney other than their personal attorney, Dennis Mulvihill, who was not available. The initial trial attorney and Mulvihill were from the same firm but he was not as familiar with the case as Mulvihill.

409/552 Pittsburgh 1980: James and Mary Krupa appeal from the order permitting Nationwide Insurance, Lawrence Williams' insurer, to pay policy limits on David Krupa's claim into court and to be released from further liability on that claim only.

*701*

Appeal No. 701 raises the questions whether it was proper for the court to direct a verdict on the issue of liability in favor of plaintiff/passenger David Krupa instead of submitting the issue of liability to the jury, and whether the size of the money verdict awarded by the jury was excessive.

The trial judge properly directed a verdict in favor of David Krupa. A judge may direct a verdict for a plaintiff only if there are no facts upon which a jury could properly find for the defendant. *Highland Tank and Mfg. Co. v. Duerr*, 423 Pa. 487, 225 A.2d 83 (1966). If there is a conflict of evidence, and the conflict provides a basis upon which a jury could possibly render a verdict for the party against whom the directed verdict is sought, the case must go to the jury. *Cox v. Equitable Gas Co.*, 227 Pa.Super. 153, 324 A.2d 516 (1974). However, the conflict must be real. If there is no more than a scintilla of evidence on the side ruled against, and a jury could not base its verdict upon that evidence, a directed verdict may still be proper. *Cromley v. Pa. R. Co.*, 211 Pa. 429, 60 A. 1007 (1905).

There was no real conflict of evidence as to how this accident occurred. The facts established by the evidence were as follows:

Richard Hoffman testified that when he saw the cars after the accident the Krupa and Williams cars were in the right northbound lane of the four lane undivided highway. (72a.)

Volunteer fireman, Richard May, testified that the accident occurred on a straight stretch at the end of a curve (83a), that he heard Williams say something like "what happened?... I must have dozed" (85a–86a), that after the accident the cars were in the northbound lane and the southbound lane was open for the passage of traffic (90a).

John Hazlett, a State Police officer at the time of the accident, testified that after the accident the cars were at rest in the northbound lane (99a), that debris from an

accident always drops straight down at the point of impact (99a), that all of the debris from this accident was in the northbound lanes (100a), and that skid marks of the Krupa vehicle were visible on the pavement from the left northbound lane to the right northbound lane (100a) and that Richard Hoffman was interviewed at the scene and stated that the Williams car came toward his and the Krupa vehicle from across the highway (102a).

Almond, the passenger in Hoffman's car, testified that the Williams and Krupa cars were in the right northbound lane, and that Hoffman's car was on the berm after the accident. (116a).

James Krupa testified that he was in the left northbound lane when he saw headlights of a car coming toward him (165a) and that he was in the same lane when the impact occurred (164a).

Williams testified that he was on the right lane of the southbound side of the road (288a) and that he then was subject to a "blinding" "glare" (285a) of uncertain origin or location (288a). The impact must have occurred after that point, but he is not sure how (286a). Trooper Hazlett had conceded on cross examination that as the Krupa vehicle moved into the passing lane to pass the Hoffman car, Krupa's headlights would have an effect on southbound traffic (107a).

The record reveals that the first impact, between the Krupa and Hoffman cars was due to the effort of Krupa to avoid an imminent collision with the oncoming Williams car. The inference from the testimony concerning the skid marks is that Krupa braked sharply and steered to the right. The inference from the testimony that the debris was found entirely on the northbound lanes is that the impact between the Krupa and Williams cars occurred in the northbound lanes. The conclusion is inescapable that Williams was on the wrong side of the road, placing him in violation of the rules of the road, 75 Pa.C.S.A. § 3301. In "wrong side of the road" fact situations, "unless the de-

fendant can explain his presence in the wrong lane, negligence can be inferred." *Fair v. Snowball Express, Inc.*, 226 Pa.Super. 295, 310 A.2d 386 (1973).

■ Williams did not present any evidence to controvert the conclusion that he was on the wrong side of the road. He testified that he recalled being in his own right lane, southbound. A glare blinded him, and then an impact occurred. He did not know where he was at the moment of impact. Evidently, the glare he saw was Krupa's headlights. Although a driver who is where he is supposed to be and is blinded by a glare might not be negligent in a collision, this rule can hardly apply to a situation where the glare results from the driver's negligence. *Cf. Maranca v. Philadelphia*, 394 Pa. 531, 147 A.2d 413 (1959); *Farley v. Ventresco*, 307 Pa. 441, 161 A. 534 (1932).

■ Williams' testimony on his own behalf is entitled to be regarded favorably in considering a directed verdict. *Stephens v. Carrara*, 265 Pa.Super. 102, 401 A.2d 821 (1979). Nevertheless, he did not present any facts on which a jury could have found in his favor.

■ Appellant Williams correctly points out that where plaintiff's proof rests entirely on oral evidence the case must go to the jury, even if defendant does nothing to rebut it, because the credibility of such evidence is for the jury to determine. *Dorn v. Leibowitz*, 387 Pa. 335, 127 A.2d 734 (1956). This "oral evidence" rule has no application to this case, however. Plaintiffs' proof established physical facts, not contradicted, from which defendant's presence on the wrong side of the road was the only possible conclusion: the skid marks from the Krupa car, the location of debris from the damaged cars, and the position of the cars following the impact. Oral evidence which establishes uncontroverted physical facts which demonstratably govern the facts may be a basis for a directed verdict. *Hartig v. American Ice Co.*, 290 Pa. 21, 137 A. 867 (1927); *Cromley v. Pa. R. Co.*

■ The trial court was therefore correct in directing a verdict.

■ The second issue in this portion of the appeal concerns the size of the verdict. Our scope of review is narrow. We will not disturb the trial court's judgment absent a clear abuse of discretion. *Skoda v. West Penn Power Co.*, 411 Pa. 323, 191 A.2d 822 (1963); *Robert v. Chodoff,* 259 Pa.Super. 332, 393 A.2d 853 (1978). The trial judge refused to modify the jury's verdict of $800,000.00. The size of the verdict on the facts before this court is not "so grossly excessive as to shock our sense of justice", and we therefore will not substitute our judgment for that of the jury which heard and evaluated all the evidence at trial, and that of the trial judge who reviewed the size of the verdict. *Skoda v. West Penn Power Co.; Kane v. Scranton Transit Co.*, 372 Pa. 496, 94 A.2d 560 (1953).

The order of the court of June 25, 1980 denying appellant's motion for a new trial as to count 1 of the complaint and entering judgment thereon in the amount of $800,-000.00 together with damages per Pa.R.C.P. No. 238 and costs is affirmed.

## 725

This appeal from the nonsuit of the plaintiff-parents challenges the court's order directing plaintiffs to proceed to trial on May 12, 1980, represented by a partner of their personal attorney, and denying their request to continue the case for approximately two days so as to insure their chosen attorney's availability. The trial was conducted on May 12 and 13, under protest by Arthur L. Leonard and thereafter through its conclusion by appellant's chosen attorney, Dennis J. Mulvihill, together with Mr. Leonard. Our scope of review on appeal is whether the trial judge abused his discretion. The Krupas maintain that he did. They assert there was a reasonable explanation for counsel's unavailability and no other attorney could proceed in place of unavailable counsel in view of the complexity of the case.

We hold that the trial court abused its discretion in refusing to grant a continuance to the plaintiff. *Nerkowski v. Yellow Cab Company of Pittsburgh*, 436 Pa. 306, 259 A.2d 171 (1969).

The case was originally scheduled to be tried during the February Term, but it was never called for trial. It was next listed to be tried during the April, 1980 term; however, it was continued because defense counsel had a conflicting appearance in the federal court for the Western District of Pennsylvania. Finally, to insure that the case would be heard during the May, 1980 term, plaintiff's counsel requested the trial court to issue an order requiring the case to proceed to trial on May 12, 1980. The trial court issued the requested order. In the interim, plaintiff's counsel was called to trial in another county. The case was expected to end prior to May 12, 1980, but lasted longer than expected, ultimately terminating on May 14, 1980. On May 9, the partner of plaintiff's counsel requested a continuance of two to three days. The request was refused. This was in spite of the fact that May 12 was the first day of the May trial term and the instant case was the first case on the list.

Pa.R.C.P. No. 218 states in part, "[W]hen a case is called for trial, if one party is ready and the other is not ready, *without satisfactory excuse* being made known to the court, a nonsuit may be entered ..." (emphasis added).

■ In *Snyder v. Port Authority of Allegheny County*, 259 Pa.Super. 448, 393 A.2d 911 (1978), this court (citing *Nerkowski, supra*) expressed four factors which must be used to determine whether a continuance was improperly denied. "[W]hether there was prejudice to the opposing party by a delay, whether the opposing counsel was willing to continue the case, the length of the delay requested and the complexities involved in presenting the case." *Id.*, 259 Pa.Superior Ct. at 453, 393 A.2d at 914.

■ In the present case, an analysis of these factors leads to a conclusion that the continuance should have been granted. Generally, where an attorney is unavailable for

trial because of a conflicting commitment in another court, the courts have found this to be a "satisfactory excuse." *Dublin Sportswear v. Charlett*, 485 Pa. 633, 403 A.2d 568 (1979); *Budget Laundry Company v. Munter*, 450 Pa. 13, 298 A.2d 55 (1972). There is no indication of any overwhelming prejudice to the defendant that could not have been remedied by the imposition of costs upon the plaintiff pursuant to Pa.R.C.P. No. 217. The trial transcript of May 12, 1980 shows that the partner of plaintiffs' counsel made an oral motion for a continuance which was opposed by counsel for the defendant. However, even defense counsel concedes that any prejudice to the defendant could be remedied by the imposition of costs. Although counsel opposed the motion, his opposition was not strenuous. In any event, this factor is not paramount. There will almost always be one party, armed and ready for battle, who will oppose the delay of the onset of hostilities. Absent a showing of prejudice to the nonmoving party, the other factors are of greater weight. There was no demonstrable prejudice to the defendant herein.

Counsel for the plaintiff requested a continuance of only two to three days. This delay would not have resulted in the case being moved to another court term. The instant case was first on the list and there were eighteen other cases on the list. If the instant case had been delayed only two days there would have been no waste of judicial resources since the other cases could be advanced, nor any long term delay in the trial since it would have still been held in the May, 1980 term. *Snyder v. Port Authority of Allegheny County; Nerkowski v. Yellow Cab Company of Pittsburgh.*

Finally, our courts have often found that a party should not be required to be represented by substitute counsel where the case is a complex one. *Nerkowski v. Yellow Cab Company of Pittsburgh; Budget Laundry Company v. Munter.* In the present case the plaintiff-father was nonsuited for failure to meet the threshold requirements for tort liability under the No-Fault Act of 40 P.S. § 1009.101 et

seq. The plaintiff-father sustained facial scarring in the accident. He was claiming that this constituted "... injury which in whole or in part consists of cosmetic disfigurement which is permanent, irreparable and severe." 40 P.S. § 1009.301(a)(5)(D). The trial court found that the facial scarring that plaintiff-father sustained, "... does not comport with the Court's concept of 'permanent, irreparable and severe' injury."

The question of whether or not facial scarring constitutes "permanent, irreparable and severe injury" sufficient to sustain a tort action is normally one for the jury, not for the court. *Martin v. Soblotney*, 296 Pa.Super. 145, 442 A.2d 700 (1982); *Beazley v. Pierce*, 19 D. & C.3d 729 (1981). However, due to the paucity of case law interpreting 40 P.S. § 1009.301(a)(5)(D), the presentation of evidence to the court and jury regarding facial scars can have a great deal of influence on the outcome of the case. Plaintiff may have been severely prejudiced in not having the counsel of his choice present the evidence. Counsel's familiarity with the case could have a great impact in such a presentation. The claim of plaintiff-wife Mary Jane Krupa for consortium, also non-suited, is derivative of her husband's claim and thus also prejudiced by the court's order.

We therefore reverse the order of the court appealed from at appeal number 725 and remand to the lower court for retrial of the claims of James Krupa and Mary Jane Krupa only. If evidence is presented of "cosmetic disfigurement which is permanent, irreparable and severe", then the issue of whether such injury meets the standards of the statute should be submitted to the jury.

### 409/552

Finally, the Krupas challenge the April 28, 1980 order entered before the beginning of the trial May 12, 1980. The order directed Williams' insurer, Nationwide, to pay into court the $50,000 policy limit on the claim of David Krupa, plus an amount for delay, allegedly computed according to

the terms of Pa.R.C.P. No. 238.[1] In addition, the court directed that "upon payment of the same, Nationwide is relieved of its liability under Counts 1 and 11 of the Complaint, this being the damage claim of David E. Krupa." The entire order was purported to be made pursuant to Rule 238.

The April 28, 1980 order resulted from a series of steps taken by the parties prior to trial, in the course of negotiating a settlement. A pretrial conference was held February 5, 1980, with both parties represented. The Krupas' counsel offered to settle the claim of David Krupa for the policy limit, $50,000, but withdrew the offer when counsel for Nationwide, representing the interest of its insured, Lawrence Williams, was unable to respond to this offer immediately. Evidently, there were further negotiations in which Nationwide offered to settle David Krupa's claim for the $50,000 but as no offer was forthcoming for the parents' claims, this offer was refused.

On February 14, 1980, counsel for Nationwide filed a petition "for leave to pay money into court" and an accompanying rule to show cause. Nationwide's petition recites the existence and size of the insurance policy and alleges an offer of settlement by the insurance company to the Krupas, none of which is denied by the Krupas. The relief requested in the petition, however, went significantly beyond the facts recited therein:

> Wherefore ... Nationwide ... requests leave to pay to the Prothonotary the maximum coverage under their policy of $50,000 on the claim of David E. Krupa, a minor, and to be *released from further liability under the terms of the policy and for the payment of any further sum*... (76a–77a.) (emphasis supplied).

The rule was signed by the court and a return day set. Nothing in the rule itself requests release from "further" sums. The rule merely directs plaintiff Krupas to show cause "why said sum should not be paid into court..."

---

1. Nationwide was "authorized" to pay $1,666.00 for delay, apparently for the time between plaintiffs' offer to settle and the date of the offer.

(80a.) On the return date of April 28, 1980, the party that petitioned for the rule, described throughout in the transcript of the proceedings on that date as Nationwide Insurance Company, appeared, but counsel for appellant Krupas did not. (81a et seq.) The court's order of that date directed payment to the court and release from further liability, as prayed for in the petition. The order explicitly releases only Nationwide and not its insured, Lawrence Williams, from excess liability above the settlement offer amount on the claim of David Krupa only. The record does not reveal that service of the petition or rule was made on Williams. Counsel for Krupas promptly petitioned the court to "vacate, strike, or amend" this order to the extent that it went beyond the tender of $50,000 and purported to determine the total extent of liability under the insurance contract, including possible liability beyond policy limits. (92a et seq.) Said petition was denied. (104a.) Both parties have recognized that the underlying issue is the possibility of a claim of "bad faith" against Nationwide for liability above policy limits.

On appeal, as in their petition to amend the order, the Krupas challenge only the release from liability for the verdict over and above the policy limit. We find merit in the Krupas' argument.

The order in question misuses Pa.R.C.P. No. 238 as the basis of a determination of liability. Rule 238 authorizes a court to award specified damages for delay to a plaintiff except when defendant has made a written offer of prompt cash payment to the plaintiff and the plaintiff is awarded a verdict of no more than 125% of the offer. The Rule's purpose and effect is to prompt insurers to make good faith offers to settle. There is no provision under the Rule for the court to become the stakeholder as it did in the instant case. Rule 238 is geared to negotiations and settlement between the parties; these offers do not require court approval. If the trial court chooses to act as stakeholder, as it did in this instance, it is merely that. Rule 238 itself

provides no basis for an order determining aspects of the insurer's liability other than damages for delay.

It is true that under Rule 238(e), a defendant may seek an order relieving it of liability of damages for delay after a trial or arbitration at which an award is made. This relief is obtainable after trial, not before, and cannot go beyond the question of whether a 10% delay penalty should be fixed. The order appealed from, however, issued before a trial, appears to invalidate any claim for further delay damages, and also any other claim, such as a claim of bad faith that might be asserted against Nationwide. We expressly do not comment on the merits of any possible bad faith claim.

Nationwide's use of the rule to show cause procedure to effectuate the result it sought was also incorrect. A rule to show cause is not original process with which to initiate resolution of a dispute which properly belongs in equity. *Cooney v. Pennsylvania Osteopathic Assoc.,* 434 Pa. 358, 253 A.2d 256 (1969). Yet the order complained of initiates and purports to resolve finally the issue of bad faith on the part of Nationwide. If there are such claims between insured and insurer they are separate claims not part of the present litigation.[2] In addition, as stated above, the extent of damages for delay per Rule 238 cannot be determined prior to trial, by a rule or otherwise. The extent of Nationwide's liability is a core issue and should not be determined through the vehicle of a rule to show cause, especially where the rule itself did not give the Krupas notice that the issue of liability would even be considered.[3] Here, the order purports to and may be inter-

2. Appellee argues strenuously that this appeal should be quashed as interlocutory. Its motion to quash was initially denied December 24, 1980, by this court, without prejudice to argue the matter further before this panel. As trial has resulted in a verdict for plaintiff considerably beyond policy limits, the order does determine finally rights of the parties. We will not quash.

3. By this concern about notice, we do not endorse appellant's argument that a final order on a rule to show cause cannot go beyond the rule to encompass a matter of which notice was given in the petition.

preted to determine finally possible liability of Nationwide beyond the limits of the policy with defendant Williams.

Additionally, it should be noted that the rule to show cause was an improper procedure to determine excess liability of Nationwide as it created a conflict of interest between petitioner Nationwide, as insurance company, and the real defendant Lawrence Williams, its insured.

 In the context of automobile accident litigation, where a driver/defendant is represented by his insurer's attorney, the defendant is entitled to "the exercise of the utmost good faith in view of the possible conflict of interest between the insurer and the insured which may develop." *Rudisill v. Nationwide Ins. Co.*, 76 York 133, objections dismissed 77 York 74 (1962). This duty continues even if policy limits are paid or promised on the claim, until the litigation is concluded by judgment or settlement. *Firemen's Ins. Co. v. Ketner*, 13 D. & C.3d 223 (1979). Thus, the instant order, insofar as it relieves Nationwide, but not its insured Williams, from liability greater than policy limits, represents a clear case of conflict of interest. If there are actionable "bad faith" claims—and we do not conclude whether there are—Williams was not represented with the "utmost good faith" in the petition leading to the order complained of.

 An automobile insurer representing its insured in a negligence action should not, prior to trial and without notice to its insured, be permitted to use a rule to show cause to absolve itself of liability beyond policy limits to its insured or to others on behalf of its insured.

The order appealed from is reversed insofar as it relieves the Nationwide Insurance Company from liability for claims over and above the $50,000 policy limit, if such claims are otherwise properly proved.

The authority appellant cites states, rather, that it is not "good practice" to do so, and we agree that in the interest of an orderly and fair proceeding it is not. It is also not good practice for an attorney who has notice of the rule, as in this instant case, not to attend a hearing on a return date.

426

## Conclusion

In summary, we rule as follows on the several appeals of this litigation:

Nos. 409/552 Pittsburgh, 1980: The order of the court relieving Nationwide Insurance Company of liability beyond the policy limit is reversed.

No. 701 Pittsburgh, 1980: The order of the court directing a verdict for plaintiff David Krupa and refusing to disturb a jury verdict in the amount of $800,000.00 is affirmed.

No. 725 Pittsburgh, 1980: The order of the court refusing to remove a nonsuit as to James Krupa and Mary Jane Krupa is reversed.

The case is remanded for further proceedings consistent with this opinion.