488 A.2d 284

Allen **FEINGOLD**, Appellee,

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY and Darrell K. Duncan, Appellants.**

Superior Court of Pennsylvania.

Argued May 9, 1984.

Filed Jan. 30, 1985.

16

18

Perry S. Bechtle, Philadelphia, for appellants.

M. Mark Mendel, Philadelphia, for appellee.

Before WICKERSHAM, WIEAND and LIPEZ, JJ.

WIEAND, Judge:

Allen Feingold, a member of the Philadelphia Bar, was injured when his vehicle was struck in the rear by a Southeastern Pennsylvania Transportation Authority (SEPTA) bus operated by Darrell Kenneth Duncan. A jury awarded compensatory damages to Feingold in the amount of $218,000.00 against both defendants and punitive damages in the amount of $50,000.00 against SEPTA. The trial court molded the verdict to include delay damages allowed by Pa.R.C.P. 238. On appeal, it is argued that the trial court erred (1) by denying a defense request for continuance; (2) by refusing to allow the defense to call plaintiff's treating physician as a defense witness after plaintiff had failed to call him; (3) by refusing to allow two Philadelphia judges to testify to plaintiff's active practice in order to rebut plaintiff's testimony that his law practice had been curtailed by his injuries; (4) by allowing the jury to award punitive damages against SEPTA; and (5) by assessing delay damages against SEPTA. These are interesting issues, and we will consider them seriatim.

■■■ The grant or denial of a motion for continuance lies in the discretion of the trial court; absent a clear abuse of discretion or manifest error, the court's decision will not be overturned on appeal. *Phoenix Mutual Life Insurance Co. v. Radcliffe on the Delaware, Inc.,* 439 Pa. 159, 165, 266 A.2d 698, 701 (1970); *Ragnar Benson, Inc. v. Bethel Mart Assoc.,* 308 Pa.Super. 405, 417, 454 A.2d 599, 604 (1982). This Court, in *Krupa v. Williams,* 316 Pa.Super. 408, 463 A.2d 429 (1983), enumerated four factors to be considered in determining whether a continuance should be granted: (1) whether a delay will cause prejudice to the opposing party; (2) whether opposing counsel is willing to continue the case; (3) the length of the delay requested; and (4) the complexities involved in presenting the case. *Id.,* 316 Pa.Superior Ct. at 419, 463 A.2d at 434. See also: *Snyder v. Port Authority of Allegheny County,* 259 Pa.Super. 448, 453, 393 A.2d 911, 914 (1978).

■ The motion for continuance in the instant case was made on the first day of trial. It was based upon plaintiff's delayed supplying of information pertaining to his injuries which had been requested by defense interrogatories. The trial court denied the continuance because the request therefor had not been filed timely as required by Pa.R.C.P. 216(C) and because defendants had failed to take earlier steps to compel prompt disclosure of the information sought to be discovered. This did not constitute an abuse of discretion. See: *Ragnar Benson, Inc. v. Bethel Mart Assoc., supra; Love v. Harrisburg Coca-Cola Bottling Co.,* 273 Pa.Super. 210, 417 A.2d 242 (1979). The fact that SEPTA had changed counsel three months before trial did not excuse almost five years of failure to propound interrogatories calculated to discover the nature and extent of the plaintiff's injuries. Cf. *Princess Hotels International v. Hamilton,* 326 Pa.Super. 226, 473 A.2d 1064 (1984).

We begin our discussion of the second issue by observing that Feingold's pre-trial statement had included the name of his treating physician among the witnesses whom he intended to call at trial. Deeming the witness' testimony unfavorable, however, Feingold determined not to call his doctor at trial as his witness. When the defense attempted to call the physician as a defense witness, the trial court precluded the witness from testifying, in response to plaintiff's objection, because the witness had not been listed in the defendant's pre-trial statement.

This ruling precluding the doctor's testimony as a defense witness was premised upon the Civil Trial Manual of the Court of Common Pleas of Philadelphia which required:

> In addition to concisely setting forth his factual contentions, each party shall include the following in his pre-trial statement: ... (4) a list by name and address of all witnesses the party intends to call at trial, except those who may be used for rebuttal or impeachment purposes. If the parties learn the names of any additional witnesses after the pre-trial conference, they will promptly exchange names and addresses.

(Civil Trial Manual, pp. 41, 42). The Trial Manual also required the pre-trial conference judge, at the conclusion of the conference, to dictate an order which would include "(c) a list of all non-rebuttal witnesses who may be called at trial." In the instant case, however, the pre-trial conference judge did not dictate such an order.

 To preclude the testimony of a witness is a drastic sanction, and it should be done only where the facts of the case make it necessary. *Gill v. McGraw Electric Co.*, 264 Pa.Super. 368, 382, 399 A.2d 1095, 1102 (1979). In determining whether to allow the testimony of a witness who has not been included in a pre-trial memorandum or in the court's order entered following pre-trial conference, a trial court should consider:

> bad faith on the part of the party seeking to call witnesses not listed in his pretrial memorandum; *see Clark v. Pa.R.R. Co.*, 328 F.2d 591 (2d Cir.1964), *cert. denied*, 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964); ability of the party to have discovered the witnesses earlier, *see Hunt v. Pa.R.R. Co.*, 41 F.R.D. 349 (E.D.Pa.1967); validity of the excuse offered by the party, *Thompson v. Calmar Steamship Corp.*, 331 F.2d 657, 662 (3d Cir. 1964); willfulness of the party's failure to comply with the court's order, *Taggart v. Vermont Transportation Co.*, 32 F.R.D. 587 (E.D.Pa.1963), *aff'd*, 325 F.2d 1022 (3d Cir.1964); the parties' intent to mislead or confuse his adversary, *Pakech v. American Export Isbrandtsen Lines, Inc.*, 69 F.R.D. 534 (E.D.Pa.1976); and finally, the importance of the excluded testimony, *Clark, supra*. Underlying the cases to which we have adverted are these basic considerations: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith of [sic] willfulness in failing to comply with the court's order.

*Gill v. McGraw Electric Co., supra,* 264 Pa.Superior Ct. at 382, 399 A.2d at 1102, quoting *Meyers v. Pennypack Woods Home Ownership Ass'n.,* 559 F.2d 894, 904–905 (3d Cir. 1977). In the absence of bad faith or willful disobedience of the rule, the most significant considerations are the importance of the witness' testimony and the prejudice, if any, to the party against whom the witness will testify.

In *Nowosielski v. Kryzosiak,* 280 Pa.Super. 243, 421 A.2d 703 (1980), the defendant had failed to include a copy of a physician's medical report in her pre-trial statement, but plaintiffs were well aware that the doctor was a prospective witness because the witness had attended the wife-plaintiff and had been listed by the defendant in her pre-trial statement. This Court held that the trial court did not err in allowing the witness to testify even though a local rule of court specifically provided that when the report of an expert witness has not been furnished, the witness should not be permitted to testify. In view of the lack of prejudice, the Court concluded, the drastic sanction of excluding the testimony of an examining physician was not warranted. *Id.,* 280 Pa.Superior Ct. at 248, 421 A.2d at 706.

The Philadelphia practice requiring a pre-trial identification of non-rebuttal witnesses is analogous to Pa.R.C.P. 4003.5(b).[1] This latter rule provides that an expert witness whose identity has not been disclosed as required by Pennsylvania's discovery rules shall not be permitted to testify on behalf of the defaulting party, absent extenuating circumstances beyond the control of the defaulting party. It has been held repeatedly, however, that whether an undisclosed witness shall be permitted to testify is discretionary with the trial court and that the trial court should not preclude testimony in the absence of prejudice. Thus, in *Royster v. McGowen Ford Inc.,* 294 Pa.Super. 160, 439 A.2d 799 (1982), this Court said:

> In order for a party to obtain a sanction as a result of another party's failure seasonably to disclose the identity of an expert witness and the substance of the expert's

1. See also: Pa.R.C.P. 4019(i).

report, prejudice to the complaining party must be shown.... Therefore, assuming that a party has not acted in bad faith and has not misrepresented the existence of an expert expected to be called at trial, no sanction should be imposed unless the complaining party shows that he has been prejudiced from properly preparing his case for trial as the result of a dilatory disclosure.

*Id.*, 294 Pa.Superior Ct. at 168–169, 439 A.2d at 804 (citations omitted) (footnote omitted). In *Kemp v. Qualls*, 326 Pa.Super. 319, 473 A.2d 1369 (1984), where there had been late disclosure of an expert witness' identity and qualifications, the trial court's decision permitting the expert to testify was upheld by this Court because "it is apparent that the appellant has not demonstrated any real prejudice flowing from the appellee['s] untimely disclosure of [the expert's] identity and qualifications." *Id.*, 326 Pa.Superior Ct. at 330, 473 A.2d at 1374. The Court observed that the appellant had had thirteen days prior to the witness' appearance in which to investigate the expert's reputation and expertise and that the trial court had expressly offered to accommodate any difficulty caused by the late disclosure. *Id.*

Most recently in *Augustine v. Delgado*, 332 Pa.Super. 194, 481 A.2d 319 (1984), the trial court had permitted expert testimony of a medical doctor in the face of a contention that prior to and during trial appellants had been "subjected to and surprised by deviations in his theories and changes in his expert opinion." *Id.*, 332 Pa.Superior Ct. at 205, 481 A.2d at 324. This Court found, contrary to appellants' arguments, that the expert's testimony had not unfairly prejudiced appellants' preparation or presentation of their case. The Court observed that the opposing party had been aware of the expert; the expert had testified approximately fifty days after the appellants had been informed of his possible participation; the appellants had received reports, slides, and answers; after trial had commenced, the court had provided the appellants with an opportunity to depose the expert; and the appellants had been able to

present rebuttal testimony. The Court concluded that "appellants had the ability and opportunity to cure any prejudice or surprise and that appellees did not demonstrate such bad faith as to require the drastic sanction of precluding" the expert's testimony. *Id.*, 332 Pa.Superior Ct. at 210, 481 A.2d at 327.

In the instant case, the plaintiff could not have been surprised. The testimony which the defense offered was to be elicited from plaintiff's treating physician. Plaintiff himself had listed the physician as a trial witness at the time of the pre-trial conference. Not only had the physician's records been available to the plaintiff for examination, but the plaintiff knew what the substance of his physician's testimony would be. It was because he knew the nature of the witness' testimony and that it would be unfavorable to his contentions at trial that plaintiff made the decision not to call his treating physician as his witness. This decision may well have been sound trial strategy. However, the trial court should not have permitted plaintiff's trial strategy to have the effect of concealing and keeping from the jury the relevant information which this important witness had to impart. Having listed his treating physician as a witness and then having elected not to call him, the plaintiff should not have been heard to cry "prejudice" when the defendant offered to call the physician as a defense witness. The likelihood of achieving a just result in any given trial is directly proportionate to the fact finder's knowledge and understanding of the relevant facts. In a trial where the primary, if not only, issues are the nature and evaluation of a person's injuries, that person's treating physician has a valuable, if not essential, contribution to make. The facts known to him, as well as his medical opinions, should not lightly be excluded.

Appellee argues, and the trial court held, that the physician's testimony was excludable because appellants had failed in their pre-trial statement to reserve the right to call witnesses listed in appellee's pre-trial statement. Such a "reservation" is a formality at best. The absence of such

an assertion in a pre-trial statement by one party is not an adequate basis on which to reject the testimony of a witness whose identity has been disclosed in the pre-trial statement of the other party and whose substantive testimony is known to both parties. A pre-trial conference may serve as an aid in expediting the resolution of disputed issues of fact at the time of trial by limiting the issues to be decided and directing the future course of the action. Where issues are defined and witnesses fully disclosed, however, relevant testimony cannot properly be precluded at trial according to which party identified the witness at the pre-trial conference. A contrary rule, which would permit exclusion of testimony from a disclosed witness would be fraught with danger and would impair rather than enhance the fact finding responsibilities of a jury. The exclusion of testimony from plaintiff's treating physician under the circumstances of this case was an abuse of discretion.

■ We are also of the opinion that it was an abuse of discretion to exclude the testimony of Judges Greenberg and Braig on the basis of the Philadelphia rule.[2] Although pre-trial statements had been prepared by the parties and a pre-trial conference had been held, there had been no order entered which defined issues or limited the witnesses to be called at trial. When the trial court refused to receive testimony from Judge Greenberg and Judge Braig, it relied exclusively on the rule in the Philadelphia Trial Manual. Therefore, we are not now concerned with the Rules of Civil Procedure which pertain to pre-trial discovery. There has been no argument made and, indeed, no basis for supposing that appellants violated any pre-trial discovery rule. We also are not concerned with a pre-trial order of court defining issues for trial and limiting the number and identity of witness. The sole issue, rather, is whether the testimony of these witnesses could properly be precluded by relying upon the local rule. Was the testimony of these

2. Judge Greenberg had been the calendar control judge, and Judge Braig had been specially assigned to a program designed to hear appeals from boards of arbitration.

witnesses subject to exclusion because the witnesses had not been disclosed in appellants' pre-trial statement?

Exclusion of testimony from undisclosed witnesses, in the absence of a pre-trial order limiting witnesses, is not required by the language of the local rule. Whether it was necessary to identify Judge Greenberg and Judge Braig as defense witnesses prior to trial, moreover, depended on whether they were to be used for rebuttal or impeachment purposes. If they were to be used to rebut or impeach, the rule did not require that their names be disclosed prior to trial.

"Rebuttal evidence" is defined in Black's Law Dictionary (5th ed. 1979) as "[e]vidence given to explain, repel, counteract, or disprove facts given in evidence by the adverse party." However, the term has also been used to mean "[e]vidence which is offered by a party after he has rested his case and after the opponent has rested in order to contradict the opponent's evidence." *Id.* The Philadelphia rule does not define the term "rebuttal" or suggest which definition was intended. The fact that the rule refers to "rebuttal and impeachment purposes" and requires that such witnesses be treated the same suggests an intent to adopt the former. To "impeach" is "[t]o dispute, disparage, deny or contradict...." Black's Law Dictionary (5th ed. 1979). "[A] witness may be impeached with respect to prior inconsistent statements, *contradiction of facts*, bias or character." *Id.* (definition of impeachment) (emphasis added). See also: *Commonwealth v. Hamm*, 474 Pa. 487, 500 n. 11, 378 A.2d 1219, 1226 n. 11 (1977) (witness may be impeached by testimony of other witnesses whose version of facts differs from that of witness being impeached). All witnesses, whether called by plaintiff or defendant, may be impeached by the other side. It is not at all unusual during a trial that unanticipated testimony on one side may require rebuttal and/or impeachment by the other side. A rule speaking of witnesses intended to rebut and impeach, therefore, was intended to include witnesses called either by the defense or by the plaintiff.

The purpose of the local rule was to compel pre-trial disclosure of the names of witnesses; it will not be interpreted as a device for excluding relevant rebuttal and impeachment evidence. Where there is ambiguity, the rule will be construed in a manner which is calculated to secure a just determination of the action. This will more likely be achieved by receiving relevant evidence than by excluding it.

The trial court's decision to preclude the witnesses from testifying was peculiarly inappropriate in this case. The only significant issues to be decided at trial were the nature and evaluation of plaintiff's injuries. Plaintiff's answers to pertinent interrogatories had not been filed until five days before trial. Although, as we have held, the trial court could properly deny defendants' motion for continuance, appellants could not properly, or fairly, be precluded from offering evidence intended to rebut and impeach plaintiff's testimony regarding the disabling effect of his injuries because rebuttal witnesses had not been identified at a pre-trial conference held prior to the filing of answers to interrogatories.

▄▄▄ Whether punitive damages can be assessed against an agency or instrumentality of the Commonwealth has not been considered by the appellate courts of this State in recent years. The general rule, as stated by our Supreme Court as long ago as 1847,[3] is that punitive damages are not recoverable against a municipality. This rule has been followed by a majority of jurisdictions, whose courts have held that in the absence of legislative authority therefor, punitive damages are not recoverable against a state or municipality. See: Annot., 1 A.L.R.4th 448. As a matter of policy, these courts have determined that the purposes to be achieved by assessing punitive damages cannot be achieved where the party to be punished is the Commonwealth or an agency thereof. Therefore, they have held

3. *Hermits of St. Augustine v. County of Philadelphia,* 4 Clark 120, 7 Pa.L.J. 124 (1847).

that punitive damages cannot be recovered against a state agency or municipality.

"The purpose[s] of punitive damages [are] to punish the wrongdoer for his outrageous conduct and to deter him and others from engaging in similar conduct in the future." *Feld v. Merriam,* 314 Pa.Super. 414, 436, 461 A.2d 225, 236 (1983). In comparison, compensatory damages are meant to compensate for the injury sustained. "[T]he award should be limited to compensation and compensation alone.... [E]xcept in those cases where public policy allows punitive damages, the loss sustained should be compensated with the least burden to the wrongdoer consistent with the idea of fair compensation to the injured." *Incollingo v. Ewing,* 444 Pa. 299, 307, 282 A.2d 206, 228–229 (1971).

A plaintiff who receives punitive damages has already been compensated for the wrong suffered by an award of compensatory damages. To the extent that an award of punitive damages is not intended as compensation, the courts have said, it is a windfall to the plaintiff. Punitive damages should be awarded, therefore, only if they serve a valid purpose. As punishment or as a deterrent against a municipality or agency of the state, an award of punitive damages has been held to be ineffective. It is unlikely that state or municipal employees will be deterred by an award of punitive damages against the state or municipality which employs them. Rather, the courts have said, a greater deterrent effect can be achieved when state and municipal officials discipline wrongdoing employees. The courts have also observed that the wealth of the defendant, a relevant factor in assessing punitive damages, is an inappropriate standard for computing punitive damages against a state or municipality which possesses the power to tax. Finally, the courts have observed, the people who must bear the weight of such an award are citizens and taxpayers, the very persons who are to benefit from making a public example of the wrongdoer. See: *Chappell v. Springfield,* 423 S.W.2d 810, 814 (Mo.1968) (aims of assessing punitive damages not met in municipal context because: (1) payment would ulti-

mately be assessed against taxpayers who are meant to benefit from public example made of wrongdoer; (2) virtually unlimited taxing power of city precludes examination of its wealth, but if trier of fact does not look at wrongdoer's wealth, punishment is inappropriate; and (3) punishment of municipal employees may better be carried out by superiors who are responsible to electorate); *Ranells v. Cleveland*, 41 Ohio St.2d 1, 321 N.E.2d 885 (1975) (punitive damages not available where husband and wife were killed when chlorine gas escaped from municipal filtration plant located across street from their home; the court observed the possibility of astronomical awards with municipal defendants while also noting that to eliminate the financial wealth of the defendant would destroy the punishment rationale); *Smith v. District of Columbia*, 336 A.2d 831 (D.C.App.1975) (punitive damages not available where a citizen sued for false arrest and assault, the court noting that deterrence would not be achieved in municipal context); *George v. Chicago Transit Auth.*, 58 Ill.App.3d 692, 693, 15 Ill.Dec. 896, 897, 374 N.E.2d 679, 680 (1978) (punitive damages not available where fare-paying passenger injured in train collision; "[t]here is no justification for punishing taxpayers or attempting to deter them from future misconduct committed by CTA employees over whom they would have no control."); *Sharapata v. Islip*, 82 App.Div.2d 850, 441 N.Y.S.2d 275 (1981), *aff'd*, 56 N.Y.2d 332, 339, 452 N.Y.S.2d 347, 350, 437 N.E.2d 1104, 1107 (1982) ("Were sovereign entities open to punitive damage, would this then mean that the monetary worth of the taxing power of the State or locality against whom such a claim might be directed would be a societally acceptable factor, no matter how relevant to the calculation of a just award? To ask the question is to answer it."). Accord: *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Newcastle Products, Inc. v. School Dist. of Blair Twp.*, 18 F.Supp. 335 (W.D.Pa.1936); *Fisher v. Miami*, 172 So.2d 455 (Fla.1965); *Gary v. Falcone*, 169 Ind.App. 295, 348 N.E.2d 41 (1976); *Berg-Bakis Ltd. v. Yonkers*, 90 A.D.2d 784, 455 N.Y.S.2d 645 (1982). See also: *Woodsum v. Pemberton*, 172 N.J.Su-

per. 489, 412 A.2d 1064 (1980), *aff'd*, 177 N.J.Super. 639, 427 A.2d 615 (1981) (punitive damages barred expressly by statute, *N.J.S.A.* 59:9–2(c)); *Punitive Damage Liability of Municipal Corporations in Pennsylvania*, 84 Dick.L.Rev. 267 (1980).

These considerations continue to be valid. SEPTA is an agency and instrumentality of the Commonwealth. Pennsylvania Urban Mass Transportation Law of July 10, 1980, P.L. 427, No. 101, § 3; 55 P.S. § 600.101 et seq. An award of punitive damages against SEPTA is not likely to deter its employees in the future; internal discipline has a better record for achieving employee performance. See: *Gary v. Falcone, supra; Chappell v. Springfield, supra.* Moreover, an award of punitive damages would in the long run punish the very people the award was intended to benefit—the citizens of Pennsylvania. See: *Gary v. Falcone, supra; Fisher v. Miami, supra.* "Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers." *Newport v. Fact Concerts, Inc., supra* 453 U.S. at 267, 101 S.Ct. at 2760, 69 L.Ed.2d at 632. Where the rationale supporting an award of punitive damages has collapsed, an award cannot be made. *Ranells v. Cleveland, supra* 41 Ohio St.2d at 7, 321 N.E.2d at 889.

Appellee argues that the traditional rule in Pennsylvania has been altered by decisions of the Supreme Court abolishing sovereign immunity. See: *Reinert v. Pennsylvania Department of Transportation*, 482 Pa. 612, 394 A.2d 490 (1978); *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978); *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973). We do not so interpret these decisions. The Supreme Court abolished the doctrine of sovereign immunity so that citizens would not be denied proper redress for wrongs committed. This redress is accomplished by an award of compensatory damages. Punitive damages, as we have observed, are intended to punish and deter the defendant; they are not intended as compensation for wrongful

injury. The Supreme Court, when abolishing sovereign immunity, neither discussed nor considered the allowance of punitive damages against a state or municipality.[4] When a similar argument was made in *George v. Chicago Transit Auth., supra,* the Court said: "Granting immunity from punitive damages, [as distinguished from sovereign immunity], is based on the lack of utility of punishing taxpayers who are guilty of no wrongdoing and in no position to exert direct control to prevent future misconduct.... [A]brogation of the doctrine of sovereign immunity did not include immunity from punitive damages." *Id.* 58 Ill.App.3d at 694, 15 Ill.Dec. at 898, 374 N.E.2d at 681.

We conclude, for the foregoing reasons, that punitive damages are not recoverable against an agency of the Commonwealth and that it was error to instruct the jury otherwise in this case.

■■■ Different considerations guide our determination of plaintiff's right to recover damages for delay pursuant to Pa.R.C.P. 238. Such damages are "merely an extension of the compensatory damages necessary to make a plaintiff whole." *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 66, 436 A.2d 147, 154 (1981), appeal dismissed sub nom. *Bucheit v. Laudenberger,* 456 U.S. 940, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982). The purposes of Rule 238 are valid and effective regardless of the identity of the defendant. See: *Commonwealth v. Twentier,* 76 Pa. Cmwlth. 537, 464 A.2d 642 (1983). In view of the fact that the case must go back for another trial, however, delay damages will have to be recalculated following a new verdict.

Reversed and remanded for a new trial on the issue of damages. Jurisdiction is not retained.

---

4. The provisions of 42 Pa.C.S. § 8528 are not applicable to and do not determine the issue in the present case because they did not become effective until December 5, 1980. It may be observed, however, that this statute, which allows recovery of only limited damages against Commonwealth agencies, does not permit recovery of punitive damages.