# DiDonato v. Prudential Property and Casualty Insurance Company

*Glen F. Fuhrman,* for plaintiff.
*Anna C. Pace,* for defendant.

LEHRER, *J.,* June 10, 1991—Before the court is a petition to vacate an arbitration award in the above-captioned matter. We will grant petitioner's request and remand the case for consideration by a new uninsured motorist arbitration panel, in accordance with the order of the court. Because the petition appears to raise weighty issues of first impression, and out of deference to counsel who have vigorously argued and briefed their respective positions, and for the benefit of the trial bar, we set forth below a detailed exposition of the court's order.

This case arises from a motor vehicle accident which occurred on December 26, 1987 at the intersection of 10th Street, Reed Street and Passyunk Avenue in Philadelphia. On that date petitioner, Nicholas DiDonato, was proceeding in a westerly direction on Reed Street, in a vehicle insured by respondent, Prudential Property & Casualty Insurance Company. As his vehicle entered the intersection, it collided with an uninsured vehicle operated

by Kim Simpkins; both drivers have maintained that they had green lights when they entered the intersection, and attribute the accident to the negligence of the other.

The automobile insurance policy issued by Prudential covering the vehicle driven by DiDonato, which was in effect at the time of the accident, contained uninsured motorist coverage in the amount of $100,000/$300,000. After receiving timely notification of DiDonato's claim for uninsured benefits, Prudential assigned its adjuster Brian Buckman to handle all aspects of the matter. Prudential ultimately informed Mr. DiDonato that it would contest the uninsured motorist claim, and both sides' proceeded to appoint arbitrators pursuant to the terms of the policy. Prudential retained Anna C. Pace, Esq., of the law firm of Adolphus Levi Williams Jr., to represent its interests in this arbitration.

Concurrently with the pendency of the uninsured motorist action, Ms. Simpkins and her passenger Steven Simmons brought a third-party suit in the court of common pleas (compulsory arbitration) against Mr. DiDonato and his wife.* Prudential assigned the DiDonatos' defense in this third-party action to Vincent P. Reilly, Esq. of Marshall, Dennehy, Warner, Coleman & Goggin. Although the basic positions of Prudential in the two cases were necessarily contradictory, and the company's interests vis-a-vis its insured conflicting, Prudential nevertheless also chose Brian Buckman to be the adjuster responsible for handling the common pleas court lawsuit.

The uninsured motorist dispute proceeded to arbitration on June 18, 1990. Present at the hearing

---

* Linda DiDonato was the owner of the vehicle her husband was driving.

was Richard D. Lucente, Esq., counsel for Ms. Simpkins and Mr. Simmons as plaintiffs in their case against the DiDonatos. The parties agreed that the hearing would be bifurcated and that only the question of liability would be resolved by the panel.

Some five weeks passed without a decision being rendered in the uninsured motorist matter. Meanwhile, the court of common pleas case had been scheduled for July 26, 1990. Petitioner alleges that on July 25, 1990, Craig L. Thorpe, Esq., the arbitrator named by Prudential to hear Mr. DiDonato's uninsured claim, informed Mr. Buckman that Prudential was going to prevail in the arbitration by a 2-1 vote. Petitioner further claims that Mr. Buckman conveyed this information to Vincent P. Reilly, and advised him to seek a continuance in the court of common pleas matter until after the written award was received. It is suggested to us that Prudential might have taken such step in order to limit the scope of its liability; since Prudential's exposure from the uninsured motorist claim was probably greater than in the Simpkins/Simmons lawsuit, deferral of the latter might arguably "shield Prudential's victory" from the possible collateral estoppel effect of an award in favor of the DiDonatos. We need not conclude this suggestion as fact, since its existence as fact is not vital to our disposition of the dispute herein.

The common pleas compulsory arbitration was continued on July 25, 1990 and rescheduled for August 2, 1990. Petitioner alleges that his counsel discovered only after July 26, 1990 that Mr. Buckman had been handling all aspects of both claims. He argues that the placement of complete investigative, assessment, and arbitration preparatory responsibility for both cases, in a single individual, would smack of fraud, collusion and/or self-dealing,

and a breach of fiduciary duty. He further submits that the panel hearing his claim improperly considered the potential res judicata and/or collateral estoppel effect of the uninsured motorist arbitration on the third-party action.

On July 30, 1990 the "uninsured" panel issued its decision in favor of Prudential by a 2-1 vote. The common pleas court third-party matter was subsequently settled for an amount below the limits of liability coverage provided by Prudential.

The instant petition asks this court to find that a reversal or new uninsured motorist arbitration hearing is warranted under these facts.

It also alleges that the award failed to comply with the procedural requirements of 42 Pa.C.S. §7310. Following oral argument on the instant motion before this court, and after careful consideration of all issues raised, we agree and direct that a new panel be convened under circumstances designed to ensure the integrity of the claims process if not, at least, its appearance.

At the outset we must determine the standard of review appropriate in this petition. Petitioner "concedes" that his arbitration was governed by common-law rules; Prudential contends that the policy provides for arbitration pursuant to the Uniform Arbitration Act, 42 Pa.C.S. §7301 et. seq., and so our review is delineated by 42 Pa.C.S. §7314.

The Arbitration Act applies only if the arbitration agreement or a subsequent agreement specifically refers to the act, or there is other evidence that the parties expressly or implicitly agreed that it should apply. *Hart v. State Farm Mutual Automobile Insurance Co.*, 288 Pa. Super. 53, 431 A.2d 283 (1981). If this is not the case, common-law principles are applicable. Although neither party has seen fit to provide this court with a copy of the insurance

policy, such is unnecessary in deciding the present petition. Both statutory and common-law arbitration awards are assailable for procedural improprieties which exist in the matter at bar.

Title 42 Pa.C.S. §7341, governing review of common-law arbitration, states:

"The award of an arbitrator in a non-judicial arbitration which is not subject to Subchapter A (relating to statutory arbitration) or a similar statute regulating non-judicial arbitration proceedings is binding and may not be modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award."

Upon application of a party, the court will vacate an award from statutory arbitration where any of five named errors are present. (42 Pa.C.S. §7314). Included among these are grounds for which:

"[T]he court would vacate the award under section 7341 (relating to common-law arbitration) if this subchapter were not applicable." 42 Pa.C.S. §7314(a)(1)(i).

Therefore, if the preconditions for vacating a common-law arbitration are present, so also are the preconditions for vacating statutory arbitration.

The "irregularity" which may taint a common-law arbitration refers to the *process employed in reaching the result* of the arbitration, not to the result itself. *Press v. Maryland Casualty Co.,* 227 Pa. Super. 537, 324 A.2d 403 (1974). (emphasis supplied) Here, the insurer's act of naming Brian Buckman to be adjuster in both cases, whether deliberate or thoughtless, created a conflict of interest which could not be remedied by appointment of separate counsel. Mr. Reilly and Ms. Pace presumably communicated with Mr. Buckman on all mat-

ters relevant to the two cases. Since Mr. Reilly was in fact *counsel for the DiDonatos,* whose interests were adverse to Prudential in the uninsured motorist dispute, communications between Reilly and Buckman forged the appearance, if not the effect, of compromising Mr. Reilly's relationship with his clients.

In the context of automobile accident litigation, where a driver/defendant is represented by his insurer's attorney, the defendant is entitled to "the exercise of the utmost good faith in view of the possible conflict of interest between the insurer and the insured which may develop." *Krupa by Krupa v. Williams,* 316 Pa. Super. 408, 463 A.2d 429 (1983).

Due to the inherent and conflicting tensions wrought by third-party actions, the court must in all such cases examine closely the conduct of the insurer and appointed counsel. While petitioner suggests that Mr. Reilly (and Ms. Pace) "knew or should have known" that Mr. Buckman was the sole adjuster, there are insufficient facts to support such a claim. We need not in any event pass judgment of the actions of counsel. We conclude that Prudential was obliged to segregate the two cases as best it could, inasmuch as the sanctity of the attorney/client relationship and the investigator/attorney relationship was seriously impaired by its handling of the litigation.

The appearance of the "exercise of the utmost good faith" required by our case law was compromised by Prudential to warrant vacating the award. It was not sufficient for Prudential to have selected two separate attorneys, one for the uninsured claim, and another for the common pleas suit. Prudential also had to appoint two separate investigative adjusters.

Petitioner has raised other issues for our consideration, such as the propriety of Mr. Lucente's presence at the uninsured motorist arbitration, and the possibility that the panel considered the possible effect of res judicata and collateral estoppel in reaching its decision. He also posits a scenario in which Prudential purposefully delayed a hearing on the third-party claim in order to secure a financial advantage. Furthermore, the parties dispute the circumstances relating to a medical examination petitioner needed prior to his arbitration. We need not address these issues since they are rendered moot by the above conclusions,

To ensure a fair result on remand, we will order that Prudential assign this uninsured motorist matter to a different claims office than originally handled the matter, and that all communications between the new adjuster and Prudential's Horsham office be strictly forbidden. In addition, the law firms of prior counsel will be disqualified from further representing Prudential in the two aspects of this matter.

Wherefore, an appropriate order will issue.

## ORDER

And now, June 10, 1991, upon consideration of the petition to vacate arbitration award entered in favor of the respondent, Prudential, it is hereby ordered and decreed that said arbitration award is hereby vacated; it is further ordered that a new uninsured motorist arbitration hearing be scheduled with both petitioner and respondent naming a new arbitrator, which arbitrators will then agree upon a third neutral arbitrator.

It is further ordered that respondent, Prudential, assign this matter to a different claims office than originally handled the matter and that the new office

and adjuster assigned to handle this matter neither communicate with any employee of the Horsham, Pennsylvania, claims office nor have access to the original file pertaining to this matter.

It is further ordered that Anna C. Pace, Esq. and the law office of Adolphus Levi Williams Jr. be disqualified from further representing the interest of respondent, Prudential, in this matter.